**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INSULET CORPORATION, | |
| *Plaintiff*, | |
| v. | Case No. 1:23-cv-11780-FDS |
| EOFLOW CO., LTD.; EOFLOW, INC.; FLEX, LTD.; FLEXTRONICS CORPORATION; FLEXTRONICS MEDICAL SALES AND MARKETING, LTD.; LUIS J. MALAVE; STEVEN DIIANNI; and IAN G. WELSFORD, | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' TIME-SENSITIVE MOTION FOR MODIFIED PROTECTIVE ORDER

To thwart a competitor's public tender offer in Korea, Insulet has alleged a purported "trade secret" theft—but refuses access to the relevant information to both a party to the transaction and Individual Defendants seeking to aid their own defense.  Although Insulet made the issue time-sensitive by filing for a temporary restraining order and preliminary injunction and demanding a response this Friday, this is an emergency entirely of Insulet's own making.  Insulet has known of EOFlow's EOPatch insulin patch product for *five years*.  Insulet tore apart EOFlow's product *over six months ago*—and even sued on a patent claim in Europe—but never mentioned anything about any trade secrets.  And Insulet has known that Medtronic planned to acquire EOFlow since at least May 2023, and likely well before that given leaks in February 2023 in the trade press.  Defendants seek access to information to timely rebut these untimely claims—ideally before the Friday deadline for Defendant's opposition to Insulet's motions.

This motion seeks only a modest adjustment to the default protective order invoked by Insulet to (1) provide the Individual Defendants accused of possessing and revealing trade secrets an unredacted copy of Insulet's filings *without exhibits*; and (2) provide Medtronic access to the Confidential Information strictly on an outside counsel only basis.  Good cause exists because (1) the local Default Protective Order for discovery in patent proceedings is inapplicable and readily modified at the Court's discretion; (2) Medtronic is so integral here that Insulet asked any order to be served on the company, so its counsel needs to know what materials are at issue; and (3) Insulet has so over-redacted its filings that Individual Defendants, who left Insulet many years ago, have no way of knowing of what they are accused.

This is not a dispute over unfettered access to truly secret information.  EOFlow will show that there are no actual trade secrets at issue, no reasonable measures taken, and no evidence of any misappropriation—only an attempt to enforce a global monopoly against a product *whose*

*release is not even pending in the United States*, while Insulet impedes the defense with an overly broad protective order. The issue here is whether relevant parties can meaningfully evaluate Insulet's claims, while remaining subject to an Order that prevents any misuse of information. To deprive such access would undermine efforts to reach an accurate decision on the merits. Instead, the Court should promptly allow controlled access to Medtronic's outside counsel and the Individual Defendants.

## I.    BACKGROUND[1]

### A.    EOFlow Introduced Its Redesigned EOPatch in 2018.

Founded in 2011 in Korea, EOFlow developed the EOPatch, a small, wearable insulin pump. In 2018, EOFlow introduced a redesigned version of the EOPatch. (*See* Compl. (Dkt. No. 1), ¶ 8.) Since that time, EOFlow has advertised, marketed, and sold the product in Korea and other markets outside of the U.S. and promoted the product at numerous trade shows.

By its own account, Insulet became aware of the redesigned EOPatch in 2018 and believed it was "strikingly similar" to Insulet's own Omnipod product. (Compl., ¶ 8.) Insulet did not raise any IP issue with EOFlow at the time. Instead, over the following years, Insulet engaged in discussions with EOFlow about a potential merger or business partnership. For example, in March 2019, Insulet's VP of Strategy & Corporate Development reached out requesting a "non-confidential overview of EO Flow." (Ex. 1.)[2] Discussions continued between Insulet and EOFlow over the following years. (*E.g.*, Exs. 2, 3.)

Over time, EOFlow also engaged in acquisition discussions with Medtronic. In February

---

[1] Insulet has not established that the Court has personal jurisdiction over EOFlow and at least certain other defendants, which the defendants will address as appropriate in due course.

[2] Exhibits are submitted with the Declaration of Adam Gershenson, Esq. ("Gershenson Decl.").

2023, industry news outlets reported that Medtronic had started the due diligence process toward acquiring EOFlow.  (Ex. 4.)  On May 25, 2023, Medtronic announced that it had entered into agreements under which it would acquire the outstanding stock shares of EOFlow.  (Ex. 5.)

As part of the deal, EOFlow agreed to continue to share information with Medtronic required to complete the acquisition.  Specifically, EOFlow agreed to provide Medtronic with financial and operating data and other information related to EOFlow to the extent reasonably required to prepare for closing and the transition after the closing.  (Gershenson Decl. ¶ 10.) EOFlow is contractually required to seek consent or a waiver if that information is subject to a confidentiality order.  (*Id*.)

**B.    Insulet Belatedly Sues to Stop Medtronic's Acquisition of EOFlow.**

Around the time Medtronic's deal diligence was reported in February 2023, Insulet sued EOFlow in Germany, alleging that the EOFlow product infringed a European patent.  (Ex. 6.)  As part of the lawsuit, Insulet presented photos of sample EOFlow products that Insult had torn apart and analyzed.  (*Id*. at 4, 22-31 (photos), 32 (describing two product samples).)

Six months later, Insulet filed the present action alleging claims including misappropriation of trade secrets and patent infringement—though in the interim Insulet had ample conversations with EOFlow and never so much as mentioned anything about purported trade secrets.  (Compl. ¶¶ 116–218.)  Insulet's complaint's allegations focus on Medtronic's acquisition of EOFlow.  (*See* Compl. ¶¶ 6, 12, 111–15.)  Insulet has now also filed a motion for temporary restraining order and preliminary injunction that is plainly targeted at the Medtronic acquisition.  (Dkt. No. 30-31.)

**C.    Insulet Refuses to Permit Disclosure to the Individual Defendants and Medtronic's Outside Counsel.**

In its rush to demand preliminary relief, Insulet did not propose any case-specific protective order, and indeed rejected EOFlow's offer to swiftly negotiate such an order.  Instead, Insulet

served its unredacted motion papers and filed its motion to seal with a citation to Local Rule 16(d)(6), which specifies that in patent cases, until a case-specific protective order is entered, documents and information produced in discovery "may only be accessed by the parties' outside counsel, the court, and their personnel."  (Dkt. No. 25 at 3.)  Insulet further refused to consent to sharing of its unredacted motion papers with any non-attorney individuals among the defendants or on an "outside counsel eyes only" basis with outside counsel for Medtronic.

Outside counsel for Medtronic at Williams & Connolly sent a letter to Insulet requesting access and noting that Medtronic "respects intellectual property rights of third parties, including trade secrets" and "has no interest in learning of and/or using the trade secrets of Insulet that are legitimately subject to protection."  (Ex. 7.)  Medtronic also noted that without access to confidential information for outside counsel, "Medtronic will be in no position to assess the basis of Insulet's claim or take protective measures with respect to any legitimately protectable Insulet trade secrets."  *Id.*  Insulet refused to permit the requested disclosure.  (Ex. 8.)

The publicly filed versions of Insulet's motion papers are heavily redacted, which materially prejudices the moving defendants because the very individuals who are accused of alleged misconduct cannot see Insulet's allegations against them.  For example, where Insulet's papers purport to discuss examples of alleged trade secret issues, it improperly redacts many entire pages and entire paragraphs of text:



(Dkt. No. 31 at 16-17; *see also* Dkt. No. 33 at 6-7, 8, 11-33.)

## II.    ARGUMENT

To facilitate a fair, reasonable, controlled defense—as opposed to a scenario where Defendants must swiftly oppose a voluminous filing with (at least) one hand tied behind their back—the Court should narrowly modify the default Protective Order for three reasons.

***First***, this Court has "broad discretion" to order or modify any protective order for good cause. *Sweet v. Polaris Indus., Inc.*, No. 3:21-cv-40076-MGM , 2022 WL 974139, at *2 (D. Mass. Mar. 31, 2022) (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 537, 532 (1st Cir. 1993)). "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise [in] an individualized balancing of the many interests that may be present in a particular case."

*Gill v. Gulfstream Park Racing Ass'n, Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (cleaned up; citation omitted).   Accordingly, the Court can decide "when a protective order is appropriate and what degree of protection is required."  *Sweet*, 2022 WL 974139, at *2 (quoting *Poliquin*, 989 F.2d at 532).  The local "default" order is nothing more than that, a background framework to allow cases to proceed, and one that can and should be adjusted as circumstances warrant.  Blanket protective orders, like the default protective order here, "are by nature overinclusive and are, therefore, peculiarly subject to later modification."  *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988).  This is especially so here because Insulet has invoked a default order for "patent proceedings," where Insulet's current motions address *only* trade secret claims, and the default governs only "discovery," which has not even begun.

**Second**, for the Individual Defendants, it is critically important that they be apprised of Insulet's allegations against them.  A core premise of Insulet's untimely lawsuit is that its alleged trade secrets were allegedly known and used within EOFlow and implemented in the EOPatch product launched five years ago.  Insulet also alleges that the three Individual Defendants had access to Insulet's alleged trade secrets when they previously worked for Insulet.   If those allegations were true, then Insulet should have no objection to the accused individuals themselves having protected access, under protective order, to the same information they allegedly already previously received and/or possessed.  *E.g.*, *New England Biolabs, Inc. v. Miller*, Case No. 1:20-cv-11234-RGS, slip op. at 8 (D. Mass May 17, 2021) (protective order permitting "Confidential" materials to be shared with "the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information").   In addition, because of the technical nature of the subject matter at issue, in fairness the Individual Defendants should be able to consult with outside counsel to explain the technical materials to assist with their

defenses.  Courts have permitted sharing of otherwise-confidential materials with designated party witnesses who may provide such assistance.  *E.g.*, *Int'l Equipment Trading, Ltd. v. Illumina, Inc.*, No. 17 C 5010, 2019 WL 6173416, at **1-2 (N.D. Ill. Nov. 20, 2019) (permitting access by certain designated party witnesses who may serve as consultants to help alleviate the issue that "their counsel will face difficulty in understanding the nature of the disclosed materials").  At a minimum, a much more narrowly redacted version of Insulet's papers, even without exhibits, should be shareable with the defendants, on a confidential basis, to provide a fair and good-faith disclosure of the allegations against each individual and against the company.

**Third**, with respect to outside counsel for Medtronic, there is no reason to prohibit access by outside counsel on the same "outside counsel only" terms currently applicable to the counsel of record for the parties under the default protective order (L.R. 16.6(d)(6)).  The access permitted to outside counsel for the parties can simply be extended to the outside counsel for this interested third-party.  Good cause supports the requested relief.  This proceeding presents unique circumstances that require EOFlow to disclose relevant information to Medtronic.  As an initial matter, EOFlow is contractually obligated to share information reasonably related to the transaction, closing, and transition with Medtronic, and contractually required to seek consent or a waiver if that information is subject to a confidentiality order.  (Gershenson Decl., ¶ 10.)

Moreover, Insulet is so focused on the Medtronic-EOFlow transaction that it seeks an order requiring EOFlow to serve the order on Medtronic, and has thus placed Medtronic's *current* possession of information related to the alleged trade secrets at the center of its proposed relief. Paragraph 7 of the Proposed Order reads,

> Within seven days of the issuance of this Court's Order, EOFlow shall file on the public docket a ***proof of service of this Order on Medtronic*** plc and any and all persons or entities that EOFlow has actual or constructive knowledge of ***having already received the***

> ***information identified in Paragraph 7* [sic]** *of this Order* via
> EOFlow, or its officers, agents, servants, employees, attorneys, as
> well as any other persons who are in active concert or participation
> with any of the foregoing.

(Dkt. No. 30-1, ¶ 7 (emphasis supplied).)[3]

Insulet recognizes, as was reported in the trade press *six months ago*, that Medtronic has already conducted substantial due diligence into EOFlow's product and received the very technical information that is the subject of Insulet's motion for preliminary relief.  Given these prior disclosures, and Insulet's attempts to insert itself into the Medtronic-EOFlow transaction, Medtronic at least needs to understand what specific information Insulet is suddenly claiming to be secret.

Unlike the circumstances where an amendment would unwind and disrupt the results of prolonged protective order negotiation between the parties, there is no reason to prevent Medtronic's counsel from viewing the materials.  And this requested modification is narrowly tailored.  EOFlow seeks to include outside counsel for Medtronic under the default protective order, so Medtronic's counsel may review sealed filings and purportedly confidential information. This is in accord with local practice.  *See Sweet*, 2022 WL 974129, at **3–4 (granting protective order with "sharing" provision to include non-party outside counsel so that the requesting party could be "more effectively represent[ed]).  Finally, the limited modification to include Medtronic's outside counsel will not prejudice Insulet because the information will be kept strictly confidential by outside counsel under the Court's default protective order terms.

---

[3] The reference to Paragraph 7 of the order appears to be a typographical error.  Presumably, Insulet refers to the information identified in Paragraph 5 of its proposed order, which (incredibly) encompasses all "product or manufacturing technical information related to" either EOFlow's or Insulet's product.  (Dkt. No. 30-1, ¶ 5.)

### III.    CONCLUSION

For the foregoing reasons, the Court should enter a modified protective order consistent with the foregoing terms.  A proposed order is submitted herewith.

Dated: August 21, 2023                    Respectfully submitted,


                                          /s/ *Michael Sheetz*
                                          Adam S. Gershenson (BBO #671296)
                                          Michael Sheetz (BBO #548776)
                                          Cooley LLP
                                          500 Boylston Street
                                          Boston, MA 02116-3736
                                          Telephone:   (617) 937-2300
                                          Facsimile:   (617) 937-2400
                                          agershenson@cooley.com
                                          msheetz@cooley.com

                                          *Counsel for Defendants EOFlow Co. Ltd.,*
                                          *EOFlow Inc., Luis J. Malave, Steven DiIanni,*
                                          *and Ian G. Welsford*

### **LOCAL RULE 7.1 CERTIFICATION**

Counsel certifies that counsel for the moving parties met and conferred both telephonically and by email with counsel for Plaintiff, and Plaintiff confirmed that Plaintiff opposes the requested relief.

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this 21st day of August, 2023, the foregoing document

was filed through the ECF system and will be sent electronically to the registered participants on

the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

_____/s/ Dawn R. Roelofs_____