UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INSULET CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 23-11780-FDS |
| EOFLOW CO., LTD.; EOFLOW, INC.; FLEX, LTD.; FLEXTRONICS CORPORATION; FLEXTRONICS MEDICAL SALES AND MARKETING, LTD.; LUIS J. MALAVE; STEVEN DIIANNI; and IAN G. WELSFORD, | | |
| Defendants. | | |

## AMENDED PRELIMINARY INJUNCTION

**SAYLOR, C.J.**

After a hearing, and after careful consideration of the pleadings and record evidence, for good cause shown, and pursuant to Fed. R. Civ. P. 65, the Court hereby preliminarily enjoins defendants EOFlow Co., Ltd. and EOFlow, Inc., (collectively, "EOFlow"), pending trial on the merits in this action, as follows:

1. EOFlow is hereby restrained from manufacturing, marketing, or selling any product that was designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets of Insulet Corporation ("Insulet"), as defined in this Order.

2. EOFlow is hereby restrained from disclosing any Trade Secrets of Insulet, as defined in this Order, to any third party, except as may be reasonably necessary for purposes of conducting this litigation, and in accordance with any applicable protective order

of this Court.

3. For purposes of this Order, the term "Trade Secrets" shall mean any and all Confidential Information of Insulet, as defined in this Order, (a) that was copied, downloaded, removed, or otherwise taken from Insulet by Luis J. Malave, Steven DiIanni, Ian Welsford, or Robert Strand, or any other present or former employee or agent of Insulet, or (b) any information that contains, derives from, or incorporates such Confidential Information.

4. For purposes of this Order, the term "Confidential Information" shall mean (a) any and all information or materials that were marked "confidential" by Insulet and (b) any and all CAD files, drawings, or specifications created by Insulet, whether or not they were marked "confidential."

5. This Order shall specifically apply to the following items relating to EOPatch version 2, among others, to the extent that the Trade Secrets of Insulet were used in their design, development, or creation:

   (a) design drawings and specifications for each physical component and subassembly;

   (b) manufacturing and quality-control instructions for each component and subassembly;

   (c) revision histories and failure modes for each component design;

   (d) bills of materials and lists of vendor pricing and capabilities for sourcing of components and raw materials;

   (e) process-validation procedures;

   (f) specifications for device software, including but not limited to the occlusion

       detection algorithm; and

       (g) Failure Modes Effects Analyses and Safety Assurance Case.

6. The foregoing restrictions do not apply to (a) any product, manufacturing, or technical information relating to the operation of EOFlow's electric osmotic actuator or (b) any aspect of the EOPatch version 2 that was designed before August 1, 2017; provided, however, that such information does not contain, derive from, or incorporate any Trade Secrets of Insulet.

7. EOFlow shall preserve all Confidential Information of Insulet located on any EOFlow computer system and any computer systems maintained or possessed by Luis Malave, Steven DiIanni, Ian Welsford, or Robert Strand to which EOFlow has reasonable access.

8. Pursuant to Fed. R. Civ. P. 65(d)(2), the restrictions set forth in paragraph 1 apply to any officers, agents, servants, employees, or attorneys of EOFlow, as well as any other persons who are in active concert or participation with any of them.

9. Within seven days of issuance of this Order, Insulet shall post a bond in the amount of $1,000,000.

10. Notwithstanding the foregoing, Paragraph 1 of this Order shall not apply to the manufacture, sale, or distribution in the Republic of Korea of EOFlow products designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets of Insulet; provided, however, that EOFlow (a) may not export such products from the Republic of Korea and (b) may not market or promote such products to prospective or new patients in the Republic of Korea or elsewhere.

11. Notwithstanding the foregoing, and in order to provide a reasonable period of

transition for existing patients, Paragraph 1 of this Order shall not apply to the sale or distribution of EOFlow products designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets of Insulet to patients residing in the European Union who were using such products as of October 6, 2023, pursuant to a written prescription or other written order from a physician or other licensed health-care provider.  This exception to Paragraph 1 shall expire on May 1, 2024, unless extended by the Court.

12. Notwithstanding the foregoing, Paragraph 1 of this Order shall not apply to distribution or use of EOFlow products designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets of Insulet, in clinical trials taking place in the United Arab Emirates that began on or before October 5, 2023, in order to permit the completion of such clinical trials, and not for any other purpose.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  October 24, 2023, at 5:40 p.m., in Boston, Massachusetts