UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSULET CORPORATION,<br><br>                *Plaintiff*,<br><br>v.<br><br>EOFLOW CO., LTD.; EOFLOW, INC.; LUIS J. MALAVE; STEVEN DIIANNI; and IAN G. WELSFORD,<br><br>                *Defendants*. | Case No. 1:23-cv-11780-FDS |

**[PROPOSED] STIPULATED E-DISCOVERY AGREEMENT**

Pursuant to Fed. R. Civ. P. 16 and L.R. 16.1, Plaintiff Insulet Corporation ("Insulet") and Defendants EOFlow Co., Ltd.; EOFlow, Inc.; Flex, Ltd.; Luis J. Malave; Steven DiIanni; and Ian G. Welsford. (collectively "Defendants") submit this Joint Statement and Stipulated E-Discovery Agreement containing the following provisions regarding the disclosure and discovery of electronically stored information ("ESI") as well as the assertion of claims of privilege or protection of trial preparation materials after production.  The terms set forth herein shall govern all ESI produced in this action going forward, except that specific requests by any party to a producing party that such producing party amend or supplement previously-produced ESI in order to conform with the terms provided herein shall not be unreasonably denied on good cause shown.

I.     **ELECTRONICALLY STORED INFORMATION**

Absent agreement of Insulet and Defendants (collectively "the Parties") or further order of this Court, the following parameters shall apply to ESI production:

1.      Each party initially shall bear its own costs of preserving, searching for, and producing ESI.  The Parties agree that they will meet and confer should a dispute arise regarding ESI production, and if the Parties cannot reach an agreement, the Parties will request that the Court resolve such disputes and determine any cost-shifting.

2.      The producing party shall retain the presumptive right and responsibility to manage and control searches of its data files, including the right to use Predictive Coding/Technology Assisted Review.

3.      The Joint Statement shall apply to all discoverable ESI in the possession, custody, or control of the Parties that can be identified and collected by virtue of being stored, in the ordinary course of business and that can be located after a reasonably diligent search.

4.      The Parties agree that, unless ordered by the Court or by agreement of the parties, it is not necessary to search for information contained on random access memory, dynamic fields of databases, backup tapes, backup systems, and disaster recovery systems.  Each Party reserves the right to request that an opposing party search such devices or systems provided that the requesting party is able to show (1) a particularized and reasonable need for the information contained on such devices or systems; (2) the unavailability of said information from alternative sources more easily accessible; and (3) the information sought will not impose an undue burden and/or cost on the producing party.  The Parties agree to meet and confer in good faith should a dispute arise under this Paragraph and will only request that the Court resolve any such disputes and determine any cost shifting if agreement cannot be reached.  No party need deviate from the retention practices it normally exercises with regard to such random access memory, backup tapes, dynamic fields of databases, and log files that are not stored or retained in the ordinary course of business when not in anticipation of litigation.

5.      The Parties agree that when comprehensive summary documentation of underlying or raw information is reasonably available and relied upon in the ordinary course of business, the production of such summary documentation is presumptively sufficient for purposes of this action only.  This agreement does not waive any party's right to pursue the underlying or raw information subject to a case-by-case demonstration of need.

6.      The Parties agree that in this action, the parties' ESI collections will include voicemail messages, text messages, and third party application chat messages to the extent relevant and proportional to requests served pursuant to FRCP 34.

7.      The Parties shall each produce imaged copies of responsive and non-privileged electronic and paper documents electronically, Bates-stamped, at a resolution of 300 dots-per-inch (dpi), Group IV black and white single page tiffs ("TIFFs" or ".tiff format") or Joint Photographic Experts Group Format ("JPEGs" or ".jpeg format") to accommodate color. Document-level text files should be produced containing the native text, if available or with OCR ("Optical Character Recognition) text for documents that have no native text (e.g., paper documents, non-searchable pdfs) and also for redacted documents.  Native files shall be produced for excel, .csv, PowerPoint, audio and video files, access database, CAD, and other similar files.  A Bates-stamped placeholder image will accompany the native file produced documents.

8.      Neither Party is required to provide English-language translations of ESI that contains foreign language unless such translation is already in the custody, possession, or control of the producing Party.  The Parties agree that any such translations do not need to be certified by the producing Party, and the requesting Party is responsible for verifying any translations. The Producing Party makes no representations as to the accuracy of any non-certified

translations produced in this matter.  The original extracted text (or OCR) shall be provided with the production.  A text file containing the translated text shall be provided as an overlay within two (2) business days of the production.

9. The parties are only obligated to provide the metadata set forth in Paragraph 10 for all ESI produced, to the extent such metadata exists.

10. DAT File: A Concordance .dat file containing the following fields will be included:

| Field Name | Field Description | Sample Values |
| --- | --- | --- |
| BegBates | Bates number for the first page of the document | ABC0000001 |
| EndBates | Bates number for the last page of the document | ABC0000002 |
| BegAttach | Bates number for the first page of parent document | ABC0000001 |
| EndAttach | Bates number for the last page of last attachment | ABC0000005 |
| Pages | Number of printed pages of the document | 2 |
| Custodian | Custodian name | Smith, Jane |
| Deduped Custodians | Names of Custodians deduplicated during global deduplication | Doe, Jane; Smith, John |
| Redacted | Descriptor for documents that have been redacted.  "Yes" for redacted documents; "No" for non-redacted documents | Yes |
| Withheld Placeholder | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with "Yes." | Yes |
| DateCreated | Document date created | mm/dd/yyyy |

| Field Name | Field Description | Sample Values |
|---|---|---|
| DateMod | Document last known modified date | mm/dd/yyyy |
| TimeCreated | Document time created | hh:mm:ss |
| TimeMod | Document last known modified time | hh:mm:ss |
| TimeZone | Time zone used to process data during document collection and processing | UTC |
| Filename | The name of a file | Filename |
| Author | The Author property of a file | John Doe |
| Extension | The file extension | Doc |
| From | Sender of an email | Joe Smith <jsmith@email.com> |
| To | Members of the To list in the email | Joe Smith <jsmith@email.com>; tjones@email.com |
| Cc | Members of the Cc list in an email | Joe Smith <jsmith@email.com>; tjones@email.com |
| Bcc | Members of the Bcc list in an email | Joe Smith <jsmith@email.com>; tjones@email.com |
| Email Subject | Subject line of an email | RE:  ESI Protocol |
| Date Sent | Date email was sent | MM/DD/YYYY |
| Time Sent | Time email was sent | HH:MM |
| File Path | The path from a drive root to the folder in which a document was stored-or the path from the root mailbox folder to the email folder in which it was stored | .\FOLDERNAME\FOLDERNAME2\FOLDER001\DOC_000001.pptx |
| Dupe File Path | The paths from a drive root to the folders in which a document was stored-or the path from the root mailbox folder to the email folder in which it was stored for each | .\FOLDERNAME\FOLDERNAME2\FOLDER001\DOC_000001.pptx; .\FOLDERNAME3\FOLDERNAME4\FOLDER002\DOC_000002.pptx |

| Field Name | Field Description | Sample Values |
|---|---|---|
| | custodian or duplicate record separated by a semi-colon | |
| MD5HASH | The HASH value of the document | a618afd2e4ea991a2523104b12c237c6 |
| ThreadID | Email Thread Identification | A0002b2e1 |
| InternetMessageID | Globally unique identifier for a message which typically includes message ID and a domain name | \<BN7PR02MB51391117B48AD2DFB383532D9F6D0@BN7PR02MB5139.namprd02.prod.outlook.com\> |
| InternetReplyID | Internet message ID of the Email replied to | \<DM6SPR01MB00598606F606C7EBE17317DED2A10@DM6SPR01MB0059.namprd11.prod.outlook.com\> |
| Confidentiality | Confidentiality designation of a document | CONFIDENTIAL |
| Text Link | The relative path to the accompanying text file | \Vol001\txt\ABC00001.txt |
| Translation Link | The relative path to the accompanying text file for the translations | \Vol001\txt2\ABC00001.txt |
| Native Link | The relative path to any accompanying native file | \Vol001\Natives\ABC00001.xls |

11.     The parties understand that all metadata must be preserved.

12.     The parties are not obligated to populate manually any of the metadata fields above in Paragraph 10 if such fields cannot be extracted from a document, with the exception of the following: BegBates, EndBates, BegAttach, EndAttach, Custodian, Deduped Custodians, Redacted and Confidentiality.

13.     In addition, a producing party shall not be required to produce in TIFF format when the conversion to TIFF format would impose unreasonable cost on the producing party and/or would result in unintelligible documents.  Under such circumstances, if the production of a native file is not possible, the producing party shall notify the requesting party within a reasonable time after learning of the issue and the Parties shall meet and confer regarding an

acceptable format for production or inspection.

14. The Parties agree to apply global de-duplication to its productions, provided custodian metadata is retained (*see* Deduped Custodians above).

15. For purposes of this Joint Statement only, "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Parties are only required to produce a single copy of a responsive document. The Parties are permitted to de-duplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the e-mail is identical. A metadata field listing all custodians who have possession of the document and a metadata field listing all file path locations where the document resided shall be included in the list of metadata fields for produced documents.

16. When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files, nor the parent document, will be de-duplicated.

17. When a party produces a replacement document, the receiving party must discard or return to the producing party all copies, including working copies, of the original if the document at issue has been replaced based on a claim of privilege or because the document was inadvertently produced with the wrong confidentiality designation.

18. While the parties agree to collect data from non-custodial share drives, the Parties shall negotiate separately regarding the production of ESI within structured database files, if

any.  To the extent the Parties cannot reach agreement as to a particular database file, the Parties will request that the Court resolve any disputes in a manner that takes into account the specifics of the files in question, the narrowly-tailored needs of the requesting party, and the anticipated burden on the producing party.

19. Paper documents included in a Party's production shall be scanned to imaged copies and produced in the same manner specified for electronic documents.  The imaged copies of scanned paper documents will be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified) and produced with document-level OCR text.

20. The Parties shall meet and confer to discuss documents that present imaging or formatting problems.  To the extent exceptions to the foregoing are required, the Parties will meet and confer to discuss alternative production and/or inspection requirements, concerns, or formats.

21. Each page of a produced document shall have a legible, unique numeric identifier Bates number not less than seven (7) digits electronically "burned" onto the page at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the document; customarily the bottom, right-hand corner of the image.  The Bates number for each document shall identify the producing party and the production number (e.g., "BETA 0000001").  The Bates numbers will be consistent in Bates prefix and number length across a producing party's production, contain no special characters, and be numerically sequential within a given document.  Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted

by a slip-sheet image accounting for the skipped Bates number. Each .tiff image will have its assigned production number electronically "burned" onto the image. Native format documents will be produced with TIFF placeholders.

22. A party may request to have documents other than specified in paragraph 7 produced in their respective native formats, which request will be accommodated if reasonable and the information sought will not impose an undue burden or cost on the producing party. A producing party shall not unreasonably deny such a request. A spreadsheet document containing material protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity shall be redacted in near native format, using a commercially available native redaction tool (*e.g.,* Blackout). A presentation file requiring redactions shall be imaged in color. The Parties agree that they will meet and confer in good faith should a dispute arise regarding the production of particular documents. Files produced in native format will be produced with a production number as their file name. file extension and, if applicable, confidential designation. For each native file produced, the production will include a TIFF image slip-sheet indicating the production number of the native file and any confidentiality designation and stating "Produced in Native Format."

23. The Parties agree that when using any document produced in native format for evidentiary purposes (including without limitations at any hearing or deposition), the party seeking to make such use will provide the production number to the producing party. Any such use shall constitute a representation by the proffering party through its counsel that the file being used is an exact duplicate of the native file produced. Should any document produced in native format be printed to .tiff format or hard copy, its unique production number and any applicable confidentiality designation shall be placed on each page of such TIFF image or hard copy, and

the use for evidentiary purposes of the TIFF image or hard copy shall constitute a representation by the proffering party through its counsel that the file from which the TIFF image or hard copy was created is an accurate and complete representation of such file.

24. Documents will be produced in black and white unless color is necessary to understand the contents of the document, color is required by Paragraph 22 above, or unless color production is reasonably and in good faith requested for a specific document by the receiving party.

25. The Parties will accommodate reasonable requests to produce high resolution images if a document produced in this litigation is illegible. A producing party shall not unreasonably deny such a request. The Parties agree that they will meet and confer in good faith should a dispute arise regarding the production of documents in a particular format.

26. Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted (*e.g.,* Redacted – Privileged; Redated – PII). Where a document contains both privileged and non-privileged responsive content the party shall redact the privileged material and produce the remainder of the document as redacted. Only where privileged content makes up the majority of the document shall a party be exempted from producing the document in redacted form. A document withheld for privilege will be produced as a slip-sheet. The production of a privileged document in a redacted form does not affect the producing party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log indicating which documents have redactions and the reason for the redaction, should the receiving party request such a privilege log on redacted document.

27. The Parties may use encryption software, such as VeraCrypt, to protect any

documents produced on electronic media such as DVDs or hard drives. The decryption password will be provided at the same time the documents are produced.

28. The Parties may produce documents from certain prior litigations that bear Bates stamps and confidentiality designations unique to those litigations. These document productions from prior litigations also include metadata that complied with discovery orders from those prior litigations. The Parties agree that they shall be permitted to produce the productions from certain prior litigations as is, and that the productions may not comply with each requirement set forth in herein. Either party, however, may request that other party produce additional metadata, color versions, and/or native files of particular documents from these earlier productions, and the party receiving such request agrees that it will produce such records in response to the request to the extent that such records exist and can be located after a diligent search.

29. Within four days after the Rule 16 conference, each side (other than individual defendants) shall disclose: (1) no more than eight (8) custodians most likely to have discoverable information in their possession, custody, or control. The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information; and (2) a list of non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration. The opposing party shall be provided at least four business days after receiving the other parties' custodian list to request additional or different custodians or additional non-custodial sources. The disclosures made pursuant to this paragraph may be amended or supplemented as appropriate, including if a party later learns of another custodial or non-custodial source, in response to objections, based on negotiations between the Parties, and/or pursuant to a Court order. The parties will meet and confer in good

faith about all requests to change custodians and non-custodial sources. Should a party request that an opposing party add additional custodians that would require the party to search the documents of more than eight custodians, the requesting party must specifically articulate the likely relevance of the additional custodian documents, and the parties will meet and confer regarding the burden of the additional search and restrictions to minimize that burden.

30. If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party before performing the search-term-based search. The opposing party shall be provided at least five business days to request additional terms be used in connection with the electronic search. Except where otherwise appropriate, focused terms, rather than over-broad terms, shall be used. Absent a showing of good cause, the producing party need only search the custodial and non-custodial data sources identified in compliance with Paragraph 29, including any amendments or supplements thereto.

31. Search terms should be constructed and run in English and Korean (or any other foreign language frequently used by the producing party). Translations or near-translations of search terms shall count as a single term.

32. The producing party may choose to employ email threading, which is the process of producing email communications that contain lesser-included email communications that may also exist separately in the producing party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. When producing the most-inclusive email in a thread, the producing party need not also produce lesser-included emails in the thread.

33. The producing party shall produce non-responsive documents attached to emails containing responsive information.

**II.     PRIVILEGE LOG**

34. The Parties will not need to log materials subject to attorney-client privilege, work product, and/or other immunity from discovery that were created on or after August 3, 2023, the date of the complaint filed in this action.

35. In order to make the creation of the Parties' respective privilege logs more efficient, the Parties will prepare hybrid categorical privilege logs. The Parties will list on the privilege log each responsive document that has been withheld as privileged. While each individual document being withheld will be listed on the privilege log, the Parties will use one or more categories from an agreed-upon list of categories to explain the justification for the individual document being withheld.

36. The Parties' privilege logs will contain all the metadata fields identified in Paragraph 10 unless a party asserts that disclosure of the metadata field will constitute disclosure of privileged information. The Parties' privilege logs will also contain (1) Privilege Type, (2) Category, and (3) Legal Source (as necessary if metadata and/or Privilege Type does not clearly reveal the legal source).

37. The Parties are only required to include on the privilege log the most complete version of an email thread that is being withheld, and are not required to include on the privilege log earlier and/or incomplete chains of the same email thread.

38. The Parties are not required to include on their respective privilege logs documents that have been redacted for privilege or other immunities, as long as there is sufficient information on the face of the document for the other party to evaluate the claim of privilege.

39. In the event that a Party believes that there is not sufficient information on the

face of the document containing privilege redactions for the receiving Party to evaluate the producing Party's privilege claim, the receiving Party may request a privilege log entry for that document, which request should not be unreasonably denied.

40. The Parties will defer production of privilege logs relating to this litigation until two weeks after the deadline for substantial completion of document production.

41. The log shall be accompanied by an index of attorneys so as to enable the receiving party to more efficiently review the log.

42. Counsel's permanent and support personnel, including translators, graphics personnel, trial consultants, and the like, are included within counsel's work-product privilege.

43. The Parties agree that any inadvertent failure to designate information with one of the designations described in any Protective Order or confidentiality agreement entered for this action (including any amendments to that Order) shall not be deemed a waiver of, nor prejudice to, any applicable designation with respect to the confidentiality of such information or document(s), provided that the producing party notifies the receiving party in writing promptly after discovery of such inadvertent failure to designate. A receiving party shall not be in breach of the Protective Order or confidentiality agreement for any use of such discovery information before the receiving party received notice of the inadvertent failure to designate. Once a receiving party has received notice of the inadvertent failure to designate pursuant to this provision, the receiving party shall treat such discovery information as the appropriately designated level pursuant to the terms of the Protective Order or confidentiality agreement.  If discovery material is designated after production, the producing party shall within five (5) business serve a properly designated copy of such materials and the receiving party shall within five (5) business return or destroy any copies of the inadvertently undesignated materials that

have been provided to individuals.

44. Pursuant to Federal Rule of Evidence 502(d), the Parties agree that any production of material over which the producing party claims attorney-client, attorney work-product, common interest, joint defense privilege, or any other applicable privilege or immunity designation, whether inadvertent or otherwise, shall not be deemed a waiver of that claim of privilege, provided that the producing party notifies the receiving party in writing promptly after determining that privileged information has been produced.  Once a receiving party has received notice of the inadvertent production, the receiving party shall within five (5) business days return (if physical) or destroy (if electronic) such produced material and shall promptly return and destroy any copies that have been provided to individuals.  Any notification by the producing party pursuant to this Paragraph shall be accompanied by a Privileged Document Log separately identifying each document over which the producing party claims privilege, irrespective of whether such document was required to be logged pursuant to paragraph 34.

45. Nothing in the Joint Statement shall prevent the receiving party from challenging the propriety of the attorney-client, attorney work product, common interest, joint defense privilege, or any other applicable privilege or immunity designation (based on information independent of the content of the asserted privileged materials) by submitting a written challenge to the Court.  Unless and until the Court rules in favor of the receiving party on such a written challenge and grants use of the discovery material at issue, the receiving party shall not use or refer to the discovery material, including in deposition, any hearing, or in any filing. Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic backup systems or a vendor's backup systems or systems that are over-written in the normal course of business.

46.     A receiving party may challenge a claim of privilege at any time after the document or a privilege log identifying the document subject to such claim is produced.  A receiving party does not waive its right to challenge a claim of privilege by electing not to challenge promptly after the subject document or privilege log identifying it has been produced.

47.     A receiving party may challenge a producing party's claim of privilege from production by notifying the producing party, in writing, of its good faith belief that the redaction or designation was not proper, including a brief explanation of the basis of the dispute with regard to each redaction or document at issue.

48.     Thereafter, the producing party shall have five business (5) days to review the redacted or designated material, to consider the circumstances, and to meet and confer with the receiving party.  If no resolution can be reached after those five business (5) days, the receiving party may submit a written challenge to the Court.

IT IS SO ORDERED

Dated:   11/7/2023                              /s/ F. Dennis Saylor IV

Hon. F. Dennis Saylor IV

United States District Judge