**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INSULET CORPORATION, | |
| *Plaintiff*, | |
| v. | No. 1:23-cv-11780-FDS |
| EOFLOW CO., LTD.; *et al.*, | |
| *Defendants*. | |

**PLAINTIFF INSULET CORPORATION'S OPPOSITION TO**
**DEFENDANTS' MOTION TO EXTEND CASE DEADLINES**

The parties agreed to and jointly proposed the current case-management schedule, which the Court ordered just a month ago, and plaintiff Insulet Corporation has been diligently complying with its discovery obligations and moving this case toward trial since then. Nevertheless, Defendants now ask the Court for a substantial extension: they seek a three-to-six week delay of all pretrial deadlines and a *three month* delay of the trial date. But Defendants have not established a need for these requested extensions—much less the type of "good cause" that Rule 16(b)(4) requires. The Court should deny their motion.

**BACKGROUND**

The federal and local rules require a court to enter a comprehensive scheduling order in every civil case. *See* Fed. R. Civ. P. 16(b); L.R. 16.1(a). To assist the court in that task, the parties must "prepar[e] a proposed pretrial schedule for the case" in advance of the Rule 26 conference. L.R. 16.1(b)(2); *see* Fed. R. Civ. P. 16(b)(1)(B).

Consistent with these requirements, counsel for Insulet and Defendants conferred and worked out a proposed schedule that they jointly submitted to the Court October 13. *See* Dkt. No. 138. The Court adopted and ordered that agreed-upon schedule—the operative case-management

schedule—on October 16.  *See* Dkt. No. 145.  Since then, Insulet has been conscientiously complying with this schedule and steadily moving this case toward trial.  For example, Insulet served its supplemental designation of trade secrets on October 27, 2023—the agreed-upon deadline for doing so.  Insulet has also been timely propounding and responding to discovery requests, including serving discovery requests shortly after the parties' Rule 26 conference and later responding to more than a dozen interrogatories and making multiple supplemental document productions (beyond the tens of thousands of technical documents already produced during expedited discovery).

Defendants, meanwhile, have been dragging their feet.  EOFlow's response to Insulet's requests for meeting minutes is representative.  During expedited discovery, Insulet requested minutes for weekly meetings discussing the EOPatch redesign.  Defendants produced some of those minutes and relayed they would revisit producing the rest during regular discovery.  On October 12, Insulet included a request for the minutes in its First Set of Requests for Production.  Defendants, once again, agreed to produce them.  But despite repeated reminders, and counsel's representation during a meet and confer on October 25 that they had collected and identified relevant documents, Defendants failed to produce those minutes until this week—only after Insulet indicated that it would raise the issue with the Court.  Likewise, Defendants have yet to make available for inspection, or even provide an anticipated date for inspection, of the devices on which Mr. DiIanni, Mr. Welsford, and Mr. Malave retained Insulet confidential documents, which Insulet first requested immediately after the scheduling order was entered.  For weeks, Defendants' counsel delayed the inspections by representing that they were preparing an inspection protocol to address Defendants' concerns.  Then, on November 7, Defendants suddenly notified Insulet that they were unable to provide a protocol and requested that Insulet do so instead.  Defendants then

dragged their feet again in responding to Insulet's proposal, only to propose plainly unreasonable restrictions on the scope of the inspection just yesterday.

On November 7—just three weeks after the Court entered the parties' agreed-upon scheduling order—Defendants' counsel approached Insulet's counsel with their current request for an extension.

## ARGUMENT

Defendants cite Rule 16(b)(4), but they fail to acknowledge the standard it establishes: "A schedule may be modified only for good cause[.]" This good-cause standard "focuses on the diligence (or lack thereof) of the moving party." *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (quotation marks omitted). In other words, an extension may be appropriate "if the deadline cannot reasonably be met *despite the diligence of the party seeking the extension*." *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154 (1st Cir. 2004) (emphasis added) (brackets omitted). For several reasons, Defendants have not satisfied this standard.

## I. Defendants have engaged in unexplained and unjustified delay.

A court may deny a motion to extend pretrial deadlines "on the basis of undue delay, bad faith or dilatory motive on the part of the movant." *Martins v. Vt. Mut. Ins. Co.*, No. 17-cv-12360-FDS, 2023 WL 2480998, at *4–5 (D. Mass. Mar. 13, 2023). Defendants have engaged in exactly this kind of undue delay here.

As discussed above, Defendants have unreasonably delayed production of documents that are admittedly relevant, responsive, and in their possession. The most significant of these delays is Defendants' failure to make available for inspection the devices on which Defendants stored hundreds of Insulet confidential documents. While Insulet sought forensic inspection of those devices as soon as it learned of them in September, and served specific Requests for Inspection immediately after the scheduling order was entered, Defendants' counsel waited until a meet and

confer on October 25 to indicate that they were withholding the devices pending the parties' negotiation of a forensic inspection protocol, which Defendants promised to draft in short order. Over the next two weeks, Insulet repeatedly inquired about the status of the proposed inspection protocol, first receiving assurances that it was forthcoming, but later receiving radio silence.  Then, during a meet and confer on November 7, Defendants informed Insulet, without explanation, that they did not expect to have a draft protocol ready to share anytime soon and suggested that Insulet provide a draft to expedite the negotiations.  Insulet promptly provided a draft protocol two days later, requesting comments by November 13 and delivery of devices by November 14 to avoid any further delays.  Defendants provided no response until November 15—after Insulet proposed raising the matter with the Court—and then provided, without explanation, extensive revisions to restrict the scope of Insulet's inspection.   Despite repeated requests, Defendants have yet to provide a date certain by which they expect to make the devices available for inspection.

Defendants have similarly delayed producing critical documents in their possession even after they were collected and identified.  While Insulet began requesting a full set of minutes for EOFlow's EOPatch Redesign meetings back in September, and Defendants' counsel conceded on October 25 that they had already collected and located relevant minutes, it took at least six follow-up emails and nearly three weeks for Defendants to produce those documents.  It likewise took Defendants weeks to reproduce in native form the Insulet CAD files that Mr. DiIanni retained on his personal devices—a task that should have taken no more than a couple days of vendor processing time.

In light of these delays, Defendants "ha[ve] not shown reasonable diligence."  *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS, 2020 WL 10500362, at *5 (D. Mass. June 24, 2020).  Rather, in the short period of time since the scheduling order was entered,

Defendants have engaged in a pattern of foot-dragging that is likely to result in discovery motion practice.  Defendants are therefore not entitled to seek an extension of the parties' agreed-upon schedule.  *Id.*

## II.  Defendants' extension request relies on conditions within their control or circumstances that were foreseeable when the parties agreed to the current schedule.

Defendants' extension request is thin on supporting facts.  But to the extent Defendants provide any grounds for their stated request, those grounds all relate to facts and circumstances that are within Defendants' control that were foreseeable at the time the parties agreed to the existing schedule just one month ago.

First, defendants argue (Mot. ¶2) that Insulet served a supplemental identification of trade secrets "[t]en days after the case schedule was set."  But the parties' joint schedule *expressly contemplated* that Insulet would serve a supplemental identification of trade secrets on October 27—exactly when Insulet did so.  Defendants cannot cite Insulet's compliance with an agreed-upon deadline as a basis for an extension.

Second, Defendants claim (Mot. ¶3) that this supplemental identification "differ[ed] substantially" from Insulet's preliminary identification.  Again, though, the parties' schedule presupposed that Insulet would serve a supplemental (and, hence, potentially broader) identification of trade secrets.  Indeed, Defendants' own motion acknowledges (Mot. ¶3) that Insulet's initial identification was a "*Preliminary* Identification of Trade Secrets."  Nor can Defendants claim any surprise about the scope of that supplemental identification.  The additional material in Insulet's supplemental identification was based largely on information found in Defendant DiIanni's production of documents from his personal devices—*i.e.*, information that was in Defendants' possession.  Insulet had made clear shortly after receiving those productions— well before the parties negotiated the scheduling order—that Insulet was incorporating by

reference all of the Insulet confidential material found in the Individual Defendants' productions into its trade secret disclosures.

Third, Defendants point (Mot. ¶4) to the fact that discovery in this case involves "thousands of documents, many of which are Korean-language documents." But the parties knew when they jointly proposed the scheduling order last month that this case would involve the production of thousands of documents. The parties knew, too, that this case would involve Korean-language documents; the suggestion that this places some undue burden on Defendants—a Korean company and its employees—is not serious.

Fourth, Defendants note (Mot. ¶5) that they have "undergone changes in counsel," and intimate that "additional [unspecified] changes in representation" are "likely to occur in the near future." But "[m]ere substitution of counsel is insufficient cause to amend a scheduling order." *Cardenas v. Whittemore*, No. 13-cv-1720-LAB, 2015 WL 4410643, at *2 (S.D. Cal. July 16, 2015); *see also, e.g.*, *Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (rejecting argument that party satisfied good-cause standard as a result of change in counsel); *Enterprise Mgmt. Ltd., Inc. v. Warrick*, No. 10-CV-660-JLK, 2012 WL 1110081, at *2 (D. Colo. Apr. 3, 2012) ("[T]he fact new counsel has appeared on the scene does not constitute 'good cause' for untimely amendment."). Defendants were represented by counsel at the time they agreed to the scheduling order just one month ago. They cannot voluntarily change counsel and then point to new counsel's unavailability as a basis for dragging out the agreed-upon schedule. Any new counsel must accommodate the existing schedule—not the other way around.

## III.   Defendants must comply with the existing schedule, and delay will prejudice Insulet.

Defendants argue (Mot. 1) that "*the Parties* cannot adequately meet the deadlines in the remaining time provided" (emphasis added). As discussed above, however, Insulet has been

6

diligently complying with existing deadlines, and will continue to do so.  Defendants offer no reason to believe otherwise.  It is in every party's interests that this case be adjudicated promptly, and further delay will prejudice Insulet, which has already invested substantial resources in moving this case to trial on the parties' agreed-upon schedule.

The assertion that Defendants cannot complete discovery on the schedule they previously agreed to barely a month ago is also not credible.  Ten lawyers from three firms with collectively more than 2000 lawyers have appeared for Defendants in this case.  (And, if Defendants are to be believed, more will enter in the "near future.")  Defendants' counsel have the resources to stick to the schedule that Defendants, through counsel, agreed to.

## CONCLUSION

Insulet has been adhering to its obligations under the agreed-upon case-management order, and Defendants have not shown good cause for any further delay.  The Court should maintain the current schedule, deny Defendants' motion, and schedule a trial at its earliest convenience in May or June of 2024.

November 16, 2023

Respectfully submitted.

/s/ *Robert D. Carroll*
Robert D. Carroll (BBO No. 662736)
Robert Frederickson III (BBO No. 670111)
Scott T. Bluni (BBO No. 660187)
Gerard J. Cedrone (BBO No. 699674)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
RCarroll@goodwinlaw.com
RFrederickson@goodwinlaw.com
SBluni@goodwinlaw.com
GCedrone@goodwinlaw.com

Jenny Zhang (BBO No. 689838)
Matthew Ginther (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-1000
JZhang@goodwinlaw.com
MGinther@goodwinlaw.com

Alexandra D. Valenti (*pro hac vice*)
James Breen (*pro hac vice*)
Timothy Keegan (*pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
AValenti@goodwinlaw.com
JamesBreen@goodwinlaw.com
TKeegan@goodwinlaw.com

*Attorneys for Plaintiff Insulet Corporation*