**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INSULET CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>EOFLOW CO., LTD.; EOFLOW, INC.;<br>JESSE J. KIM (a/k/a JAE JIN KIM);<br>LUIS J. MALAVE; STEVEN DIIANNI;<br>and IAN G. WELSFORD,<br><br>*Defendants*. | C.A. No. 1:23-cv-11780-FDS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO
DISMISS COUNTS III, V, VII, AND IX OF THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

BACKGROUND ........................................................................................................................... 2

    I.       Procedural History ................................................................................................. 2

    II.      Insulet's Patent Infringement Allegations ............................................................. 3

    III.     Insulet's Civil Conspiracy Allegations .................................................................. 3

LEGAL STANDARD..................................................................................................................... 5

    I.       Lack of Subject Matter Jursidiction Under Rule 12(b)(1) ..................................... 5

    II.      Failure to State a Claim Under Rule 12(b)(6).......................................................  6

ARGUMENT .................................................................................................................................. 6

    I.       The Court Lacks Jurisdiction Over Insulet's Declaratory Judgment Claims
           Because They Are Not Ripe (Counts III, V, VII) ..................................................  7

           A.      The Amended Complaint fails to plead an immediate threat of
                   infringement. ............................................................................................ 7

           B.      The Amended Complaint fails to plead a real threat of
                   infringement. .......................................................................................... 10

    II.      Insulet Fails to State a Claim of Civil Conspiracy (Count IX) ............................ 10

CONCLUSION............................................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................5, 12

*Bell v. Rinchem Co.*,
    2014 WL 11290899 (D. Mass. Dec. 2, 2014) ..........................................................................10, 12

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
    495 F.3d 1340 (Fed. Cir. 2007) ..................................................................................................5

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
    2022 WL 138642 (D. Mass. Jan. 14, 2022) ..............................................................................11, 12

*Cheng v. Neumann*,
    51 F.4th 438 (1st Cir. 2022) ......................................................................................................6

*In re Colonial Mortg. Bankers Corp.*,
    324 F.3d 12 (1st Cir. 2003) ........................................................................................................6

*Douglas v. Hirshon*,
    63 F.4th 49 (1st Cir. 2023) ........................................................................................................6

*Dow Jones & Co. v. Ablaise Ltd.*,
    606 F.3d 1338 (Fed. Cir. 2010) ..................................................................................................5

*GAF Bldg. Mats. Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ......................................................................................................8

*Hagenah v. Berkshire Cnty. ARC, Inc.*,
    2018 WL 907407 (D. Mass. Feb. 15, 2018) ..............................................................................10, 12

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
    95 F. Supp. 3d 240 (D. Mass. 2015) ..........................................................................................12

*Legal Sea Foods, LLC v. Strathmore Ins. Co.*,
    36 F.4th 29 (1st Cir. 2022) ........................................................................................................6

*McKee v. Cosby*,
    874 F.3d 54 (1st Cir. 2017) ........................................................................................................6

*Md. Cas. Co. v. Pacific Coal & Oil Co.*,
    312 U.S. 270 (1941) ..................................................................................................................5, 7

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Medimmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ............................................................................................................5, 7

*Sandoz, Inc. v. Amgen, Inc.*,
  773 F.3d 1274 (Fed. Cir. 2014) ........................................................................................7, 8, 9

*Teva Pharms. Int'l GmbH v. Eli Lilly and Co.*,
  2018 WL 10246999 (D. Mass. Sept. 17, 2018) ........................................................5, 7, 9, 10

*Williams v. Northfield Mount Hermon Sch.*,
  504 F. Supp. 1319 (D. Mass. 1981) ................................................................................11, 12

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ................................................................................................................5

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ..............................................................................................................10

**Statutes**

28 U.S.C. § 2201(a) .......................................................................................................................5

**Other Authorities**

Federal Rules of Civil Procedure
  12(b)(1) ................................................................................................................................1, 4
  12(b)(6) ................................................................................................................................1, 5

Insulet cannot state viable claims for a premature declaratory judgment of patent infringement for a product that does not even exist in the United States, or a "conspiracy" within a single company. Accordingly, four of the nine claims Insulet asserts in its Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b) because each is fatally defective.

***First***, the Court should dismiss Insulet's three claims seeking declaratory judgments of patent infringement against the EOFlow defendants for lack of subject matter jurisdiction under Federal Rule 12(b)(1). (*See* ECF No. 159 at Counts III, V, and VII (the "Declaratory Judgment Claims").) Insulet has not pled an immediate or real threat of patent infringement so there is no case or controversy over which the Court may exercise jurisdiction. Insulet's purported hook for the Declaratory Judgment Claims—that EOFlow submitted an FDA application eight months ago in relation to its insulin patch-pump product called EOPatch 2 that *has long been withdrawn*, does not establish to a case or controversy and thus does not give rise to jurisdiction under the Declaratory Judgment Act. Further, the mere possibility that EOFlow *might*, at some indeterminate future time, submit another FDA application for an insulin patch pump product is too attenuated to support declaratory judgment jurisdiction. Declaratory judgment jurisdiction is discretionary, and the Court should decline to exercise it even if an actual controversy could arise.

***Second***, Insulet's civil conspiracy claim is barred by the intracorporate-conspiracy doctrine because Insulet alleges that all the purported co-conspirators are agents and/or officers of EOFlow acting in their official capacities. This doctrine correctly observes that no unlawful conspiracy exists between agents and officers acting on behalf of the same organization as a legal entity cannot conspire with itself. Insulet cannot state a claim for relief under Fed. R. Civ. P. 12(b)(6).

This is not a dispute over core or even plausible claims. Defendants' targeted motion focuses on claims that are, at best, peripheral allegations barred by black-letter law. To allow such

1

claims to proceed would simply waste the parties' and the Court's resources. Rather than multiply proceedings by entertaining these infirm allegations, the Court should grant Defendants' motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

This is primarily a trade secret case in which Insulet accuses EOFlow Co., Ltd. and EOFlow, Inc. (collectively, "EOFlow") and Messrs. Kim, Malave, Welsford, and DiIanni (collectively, the "Individual Defendants") of misappropriating purported "trade secrets," based almost entirely on retention of documents from a decade ago that Insulet never requested back after its employees' departures. (ECF No. 159 at Count I (Defend Trade Secrets Act claim).) As a would-be sidecar to its trade secret claim, Insulet accuses EOFlow of infringing three patents based on a single act of importation that occurred in 2018 (*id.* at Counts II, IV and VI); seeks a declaration of infringement for those same three patents based on infringement it vaguely alleges would occur "in the immediate future" (*id.* at Counts III, V, and VII); alleges unfair competition under Massachusetts state law against all defendants (*id.* at Count VIII); and pleads a civil conspiracy against all defendants (*id.* at Count IX).

Insulet filed its Amended Complaint on October 27, 2023, nearly three months after it initiated suit on August 3, 2023. (*Compare* ECF No. 1, *with* ECF No. 159 ("Am. Compl.").) During that nearly three-month period, the parties engaged in expedited discovery (including document production and depositions) and briefed Insulet's motion for a preliminary injunction on its DTSA claim, which the Court granted. Insulet's impetus for its preliminary injunction proceedings was that Medtronic stood poised to acquire EOFlow, presenting a (still far-off) risk of competition to Insulet's Omnipod insulin patch pump device. (Am. Compl., ¶¶ 13, 84.)

## II. INSULET'S PATENT INFRINGEMENT ALLEGATIONS

The Amended Complaint asserts six counts relating to patent infringement. Three of those counts (II, IV, and VI) are rooted in allegations based solely on EOFlow's 2018 importation of insulin patch pump product samples. (Am. Compl., ¶¶ 79, 110, 122, 134.) The other three counts (III, V, and VII)—the Declaratory Judgment Claims—which are the subject of this Motion—rest solely on the following factually unsupported conclusory allegation: "As set forth above, EOFlow has imported the EOPatch into the United States and intends to, in the immediate future, bring the device to market to sell and offer to sell in the United States." (*Id.*, ¶¶ 116, 128, 140.)

As the Amended Complaint acknowledges, however, while EOFlow submitted an application to FDA for its EOPatch 2 device on December 27, 2022, EOFlow subsequently withdrew that submission. (*Id.*, ¶ 84.) Although not specifically called out in the Declaratory Judgment Claims, the Amended Complaint speculates, "on information and belief," that EOFlow might theoretically one day submit an application with FDA seeking approval "for a product based upon the EOPatch"—***not the EOPatch product it accuses of infringement***—"upon the close of the Medtronic acquisition"—a deal that has not closed. *Id.*

## III. INSULET'S CIVIL CONSPIRACY ALLEGATIONS

EOFlow Co., Ltd. is a publicly traded Korean corporation based in South Korea. (Am. Compl., ¶ 16.) EOFlow Inc. is a Delaware corporation based in California. (*Id.*, ¶ 17.) According to the Amended Complaint, the Individual Defendants are current or former employees and/or consultants for either EOFlow Co. Ltd. or EOFlow, Inc. Specifically:

- Mr. Kim founded EOFlow Co., Ltd. in 2011 and serves as its CEO (*id.*, ¶ 8);
- Mr. Malave has served as EOFlow, Inc.'s President from 2017 through 2022 (*id.*, ¶ 19);

3

- Mr. Welsford served as EOFlow, Inc.'s Chief Compliance Officer starting in 2018[1] (*id.*, ¶ 21); and

- Mr. DiIanni began consulting for EOFlow in 2018 (*id.*, ¶ 20).

Insulet alleges that Messrs. Malave, Welsford, and DiIanni each "[a]t all times relevant to this action, … acted as an agent for EOFlow as he acted on behalf of and for the benefit of EOFlow." (*Id.*, ¶¶ 19-21.)

In support of its new civil conspiracy claim, Insulet contends that Messrs. Malave, Welsford, and DiIanni each retained purported trade secret information when they departed Insulet many years ago, and later used that information at EOFlow to develop a competitive insulin patch product, EOPatch 2. (Am. Compl., ¶¶ 50, 59, 61, 63.) The Amended Complaint accuses Messrs. Kim and Malave of recruiting and conspiring with Messrs. DiIanni and Welsford for this purpose but fails to identify any specific conspiratorial agreement among all defendants. (*Id.*, ¶ 67.) Rather, according to Insulet, Messrs. Kim and Malave knowingly directed Mr. DiIanni under the terms of his consulting agreement to use Insulet confidential information to assist EOFlow in the development of EOPatch 2. (*Id.*, ¶ 61.) Insulet also alleges that, "[d]uring the course of his employment" at EOFlow, Mr. Welsford instructed a Nephria Bio employee to copy Insulet confidential information "for the benefit of EOFlow, Kim, and Malave" that was used to obtain premarket approval for EOPatch 2 before various regulatory agencies. (*Id.*, ¶ 63.)

---

[1] Although the Amended Complaint alleges that Mr. Welsford served as EOFlow's Chief Technology Officer starting in 2018, publicly available EOFlow press releases identify Mr. Welsford as joining as its Chief Compliance Officer. *See* http://www.eoflow.com/eng/news/news_010100.html?bmain=view&uid=137.

**LEGAL STANDARD**

**I.      LACK OF SUBJECT MATTER JURSIDICTION UNDER RULE 12(B)(1)**

"Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case." *See, e.g., Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). "A 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may raise either a facial or factual challenge," including based on whether an "actual controversy" exists under the Declaratory Judgment Act. *See Teva Pharms. Int'l GmbH v. Eli Lilly and Co.*, 2018 WL 10246999, at *4-*5 (D. Mass. Sept. 17, 2018).

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration" only when there is a "case of actual controversy." 28 U.S.C. § 2201(a). The phrase "case of actual controversy … refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

"Even when an 'actual controversy' exists, the Declaratory Judgment Act 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Teva Pharms.*, 2018 WL 10246999, at *6 (quoting *Wilton v. Seven Falls Co.*, 515 U.S.

277, 286 (1995) ("On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration,' 28 U.S.C. § 2201(a).")).

## II. FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a court must "'accept as true the complaint's well-pleaded factual allegations' and 'draw all reasonable inferences in favor of the non-moving party,'" *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) (quoting *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017)), it does not credit "'conclusory legal allegations' [or] factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022)). "[A]n action can be dismissed on the basis of an affirmative defense" if the defense is "conclusively establish[ed]" "from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

## ARGUMENT

Counts III, V, VII, and IX of the Amended Complaint are legally insufficient and should be dismissed. First, the Court lacks jurisdiction to hear Insulet's Declaratory Judgment Claims because they are premature. Insulet speculates that EOFlow might submit a different FDA application for a different device at some unspecified future date but pleads no facts showing an

6

immediate or real threat of infringement exists to establish jurisdiction. Second, the Amended Complaint alleges a conspiracy among EOFlow and its officers and/or agents acting in their official capacities—allegations that place Insulet's civil conspiracy claim squarely within application of the intracorporate-conspiracy doctrine. These incurable defects compel dismissal.

I. **THE COURT LACKS JURISDICTION OVER INSULET'S DECLARATORY JUDGMENT CLAIMS BECAUSE THEY ARE NOT RIPE (COUNTS III, V, VII)**

Declaratory judgment jurisdiction exists only where there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" declaratory judgment. *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co.*, 312 U.S. at 273).

Here, Insulet's basis for declaratory judgment jurisdiction is the bald assertion that EOFlow purportedly "intends, in the immediate future," to bring EOPatch 2 "to market to sell and offer to sell in the United States." (Am. Compl., ¶¶ 116, 128, 140.) But the Amended Complaint concedes that EOFlow is not presently seeking the required FDA clearance for its device, and that EOFlow withdrew its prior FDA submission. (*Id.*, ¶ 84.) Insulet's only proffered basis for seeking declaratory relief is that EOFlow *might* submit another application to the FDA seeking approval for a *different product* than the one at issue in Counts II, IV and VI if and when Medtronic acquires EOFlow, an event that has yet to occur and may not occur. (*Id.*) Such attenuated allegations do not and cannot support the immediate and real threat of infringement required to establish declaratory judgment jurisdiction.

A. **The Amended Complaint fails to plead an immediate threat of infringement.**

Courts evaluate immediacy by examining "how far into the future the potential infringement is, whether the passage of time might eliminate or change any dispute, and how much, if any, harm … an adjudication might redress." *Teva Pharms.*, 2018 WL 10246999, at *6 (quoting *Sandoz, Inc. v. Amgen, Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014)). All of these considerations

7

demonstrate a lack of immediacy in this case. First, there is no clear indication about whether or when in the future any potential infringement may occur. Indeed, there is no allegation that EOFlow has even taken the required threshold step of applying for (much less receiving) FDA approval for its EOPatch 2 device, all of which would substantially predate any purported infringement. Second, because Insulet is claiming that trade secret misappropriation infects EOFlow's current EOPatch device, unless and until EOFlow is cleared of wrongdoing, a future EOPatch device may change in ways that could change the infringement dispute.

Insulet speculates that EOFlow "intends, in the immediate future" to bring EOPatch 2 to market, but any immediacy is dispelled on the face of the Amended Complaint. (*Compare* Am. Compl., ¶¶ 116, 128, 140, *with id*., ¶¶ 12, 84.) FDA clearance for EOFlow's device is a **prerequisite** for EOFlow to offer to sell it in the United States, and the Amended Complaint admits EOFlow has not begun the regulatory approval process to do so with the FDA. Insulet thus prematurely seeks a declaratory judgment for future conduct that is gated behind regulatory approval that EOFlow has yet to seek, a fact pattern that the Federal Circuit has held does not support declaratory judgment jurisdiction. *See Sandoz*, 773 F.3d at 1279 ("We are aware of no decision in which we have found a case or controversy when the only activity that would create exposure to potential infringement liability was a future activity requiring an FDA approval that had not yet been sought."); *see also GAF Bldg. Mats. Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("[L]ater events may not create jurisdiction where none existed at the time of filing.").

The allegations that the FDA approval process "can take less than six months" and, "on information and belief, EOFlow is poised to submit an application for a product based upon the EOPatch upon the close of the Medtronic acquisition," do not change this. (Am. Compl., ¶ 84; *see*

*also id.*, ¶ 12.) These conjectural allegations still fail to demonstrate an immediate threat of infringement. First, Insulet anchors its immediacy claim to a hypothetical FDA application to be filed "upon the close of the Medtronic acquisition," but nowhere does Insulet allege when that acquisition, which it has done everything in its power to spoil, might occur.

Second, while Insulet claims that the FDA's 510(k) approval process can take less than six months, Insulet acknowledged a potentially longer approval timeline in its original complaint that it conveniently omits from the Amended Complaint. (*See* ECF No. 1, ¶ 108 ("As evidenced in the same third-party "Emergo" data, … approximately 95% of devices are approved within twelve months of submission.").) But even a six-to-twelve-month timeline is far from guaranteed. For example, the FDA could identify technical deficiencies in a premarket application that prevent or postpone approval. EOFlow may also change or modify its patch pumps to design around any plausible interpretation of Insulet's assert patent claims or trade secret allegations during that time. These varying and indeterminate timeframes, and activities that may occur during that time, demonstrate the absence of an immediate threat of infringement, much less from the accused current EOPatch 2. *Sandoz*, 773 F.3d at 1277 ("The immediacy requirement is concerned with whether there is an immediate impact on the plaintiff and whether the lapse of time creates uncertainty.").

Courts in this district have dismissed declaratory judgment claims for patent infringement with more concrete product-approval timelines than present here. In *Teva Pharms.*, the defendant, a massive pharmaceutical company, had a drug application pending before the FDA with a *defined* timeline of expected approval. 2018 WL 10246999, at *7. Yet, despite the plaintiff's claims that the defendant could readily obtain FDA approval, the court declined to exercise jurisdiction because the plaintiff's estimated FDA approval timeline was "speculative at best." *Id.* Unlike in

*Teva Pharms.*, Insulet cannot even allege a concrete time-to-market that some future patch pump—not the accused EOPatch 2—would enter the U.S. market.

### B. The Amended Complaint fails to plead a real threat of infringement.

Reality is assessed "by considering whether the design of the product in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Teva Pharms.*, 2018 WL 10246999, at *6. Here, the only potentially "fixed" EOFlow product design alleged in the Amended Complaint is EOPatch 2, but nowhere does Insulet allege that EOFlow will imminently file a future FDA premarket application for that device. Instead, Insulet contends that EOFlow might request FDA clearance for an unspecific patch pump design "based upon the EOPatch" against which Insulet has made no infringement allegations. (Am. Compl., ¶¶ 12, 84.) This hypothetical (and unaccused) device is not "substantially fixed" nor meaningfully described in the Amended Complaint. It cannot support a real threat of infringement, which requires specific allegations that an actual product practices each and every element of an asserted patent claim.

Ultimately, Insult is asking the Court to exercise jurisdiction and impose judgment based on tenuous allegations that at some indeterminate future time EOFlow may apply for FDA clearance on some unspecified patch pump that *might* be approved for marketing around six-to-twelve months from the application's submission date. Neither the requirement of immediacy nor reality is satisfied under these attenuated allegations. The Court lacks subject matter jurisdiction over the Declaratory Judgment Claims and should dismiss them.

## II. INSULET FAILS TO STATE A CLAIM OF CIVIL CONSPIRACY (COUNT IX)

A civil conspiracy claim generally requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Bell v. Rinchem Co.*, 2014 WL

10

11290899, at *17 (D. Mass. Dec. 2, 2014). As a matter of black-letter law, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Hagenah v. Berkshire Cnty. ARC, Inc.*, 2018 WL 907407, at *8 (D. Mass. Feb. 15, 2018) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017)). Accordingly, the intracorporate-conspiracy doctrine generally forecloses the existence of a conspiracy among a single entity because that entity "cannot conspire with itself." *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 2022 WL 138642, at *9 (D. Mass. Jan. 14, 2022). *See also Williams v. Northfield Mount Hermon Sch.*, 504 F. Supp. 1319, 1328-29 (D. Mass. 1981).

Such is the case here. Insulet concedes in the Amended Complaint that the Individual Defendants are agents of the same legal entity—EOFlow—acting in their official capacities. Based on Insulet's agency allegations, these individuals' actions are attributed to EOFlow, which cannot conspire with itself.

Insulet cannot escape application of the intracorporate-conspiracy doctrine. The Amended Complaint alleges only a conspiracy among officers and/or agents of EOFlow acting in their official capacities. Insulet alleges that the conspiracy occurred while (1) Mr. Malave performed his duties as president of EOFlow, Inc., a wholly-owned US subsidiary to EOFlow Co., Ltd.; (2) Mr. Welsford performed his duties as Chief Compliance Officer to EOFlow, Inc.; and (3) Mr. DiIanni, was contracted as a consultant to EOFlow, Inc. (*See* Am. Compl., ¶¶ 60-63.) According to Insulet, each of these individuals "[a]t all times relevant to this action, … acted as an agent for EOFlow as he acted on behalf of and for the benefit of EOFlow." (*See id*., ¶¶ 19-21.) Mr. Kim, the only other individual defendant to the civil conspiracy claim, is and was at all relevant times EOFlow's CEO. (*Id*., ¶ 18.) Any agreement between these individuals is among alleged agents of a single legal entity—EOFlow—and their actions are attributed to EOFlow. The purportedly

concerted effort among these individuals directly implicates the intracorporate-conspiracy doctrine.

The fact that some of these individuals may have been agents or officers of EOFlow Co., Ltd. versus EOFlow, Inc. makes no difference to the analysis and cannot support a plausible civil conspiracy claim. Their purported acts are nevertheless attributed to the same organization, as "a company cannot conspire with its wholly-owned subsidiary." *Bell*, 2014 WL 11290899, at *17 (D. Mass. Dec. 2, 2014) (citing *United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 269 (D. Mass. 2015) (collecting cases)). (*See also* Am. Compl., ¶ 17 (alleging EOFlow, Inc. is a subsidiary of EOFlow Co., Ltd.); *supra* n. 1 (press release identifying EOFlow, Inc. as wholly-owned by EOFlow Co., Ltd.).)

Courts in this district have confronted, and dismissed, similarly pled civil conspiracy claims. In *Hagenah*, the plaintiff alleged civil conspiracy based on the purported tortious actions of five individuals acting within the scope of their duties as officers, employees, or agents of an organization. 2018 WL 907407, at *8. The court dismissed the civil conspiracy claim, attributing the individuals' acts to the organization, which "cannot conspire with itself." *Id.* (collecting cases). The court in *Bell* reached a similar conclusion where, as here, the plaintiff pled a civil conspiracy between and among a corporation, its employees acting within the scope of their employment, and the corporation's wholly owned subsidiary. 2014 WL 11290899, at *17. *See also BlueRadios*, 2022 WL 138642, at *9 (dismissing civil conspiracy claim under intracorporate-conspiracy doctrine); *Williams*, 504 F. Supp. 1319 at 1328-29 (same). Insulet's civil conspiracy allegations are materially indistinguishable from those brought by the plaintiffs in these cases. They require the same result—dismissal with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant their Motion.

COOLEY LLP

*/s/ Adam S. Gershenson*
Michael Sheetz (BBO #548776)
Adam S. Gershenson (BBO #671296)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300
msheetz@cooley.com
agershenson@cooley.com

Lowell Mead
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
lmead@cooley.com

Elizabeth M. Flanagan
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

Dustin Knight
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004
(202) 842-7800
dknight@cooley.com

*Attorneys for Defendants EOFlow Co., Ltd., EOFlow, Inc., and Jesse Kim*

DONNELLY, CONROY & GELHAAR, LLP

*/s/ T. Christopher Donnelly*
T. Christopher Donnelly (BBO #129930)
Nathaniel R.B. Koslof (BBO #691094)
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880
Tcd@dcglaw.com
Nrbk@dcglaw.com

*Attorneys for Defendants Luis J. Malave, Steve DiIanni, and Ian G. Welsford*

13

**LOCAL RULE 7.1 CERTIFICATION**

I certify that Defendants have complied with the provisions of Local Rule 7.1 by conferring with counsel for Plaintiff on December 4, 2023. The parties were unable to agree with respect to the issues raised in the Motion to Dismiss, and are thus at an impasse and require the Court's assistance to resolve the dispute.

*/s/ Adam S. Gershenson*
Adam S. Gershenson

**CERTIFICATE OF SERVICE**

I, Adam S. Gershenson, hereby certify that on this 6th day of December 2023, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing, and paper copies will be sent to any non-registered participants.

/s/ *Adam S. Gershenson*
Adam S. Gershenson