UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INSULET CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. |
| v. | ) ) ) | 23-11780-FDS |
| EOFLOW CO., LTD.; EOFLOW, INC.; FLEX, LTD.; FLEXTRONICS CORPORATION; FLEXTRONICS MEDICAL SALES AND MARKETING, LTD.; LUIS J. MALAVE; STEVEN DIIANNI; and IAN G. WELSFORD, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**SAYLOR, C.J.**

This is a dispute concerning the alleged disclosure and misappropriation of trade secrets involving plaintiff Insulet Corporation's insulin "patch pump," the Omnipod. Plaintiff asserts claims for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (DTSA); breach of contract; patent infringement under 35 U.S.C. § 271; unfair competition in violation of Mass. Gen. Laws ch. 93A; and civil conspiracy.

Plaintiff filed its initial complaint in this action on August 3, 2023, and a first amended complaint on October 27, 2023. Plaintiff has now moved pursuant to Rule 15 for leave to file a second amended complaint. The proposed second amended complaint essentially seeks (1) to dismiss the declaratory judgment claims against EOFlow Ltd. and (2) to add claims against Nephria Bio, Inc. for misappropriation of trade secrets under the DTSA, violation of Mass. Gen.

Laws ch. 93A, and civil conspiracy.  For the following reasons, that motion will be granted.

**I.        Analysis**

Under Rule 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances.  Fed. R. Civ. P. 15(a)(2).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In determining whether to grant a motion to amend, courts must examine the totality of the circumstances and exercise their "informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006) (citing *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1989)).  District courts enjoy "significant latitude in deciding whether to grant leave to amend." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008).

"[T]he liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases." *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright et al., Federal Practice & Procedure § 1487, at 611 (2d ed. 1990)).  Leave to amend may be denied because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, defendants contend that the motion for leave to amend should be denied on grounds of undue delay and futility.  They allege that "Insulet was aware of Nephria Bio as of August 2023 and armed with more than sufficient information concerning its current (futile) theory of liability as of October 2023."  (Docket No. 252, 13).  They also allege that the proposed second

amended complaint fails to "identify any well-[pleaded] facts in support of its proposed claims against Nephria Bio." (*Id.* at 12).

### A. Undue Delay

Plaintiff's motion for leave to file a second amended complaint will not be denied on the basis of undue delay. First, plaintiff contends that it received more than 250,000 documents from defendants during the week of December 5, 2023, and that the receipt of those documents constituted "the first time Insulet had any substantial concrete evidence of Nephria Bio's culpability." (Docket No. 258, 5). According to plaintiff, it was only one week later that "Insulet informed Defendants that, in light of Insulet's review of the December 5 productions, Insulet intended to move to add Nephria Bio as a Defendant." (*Id.* at 6). Insulet then "served a copy of its motion and proposed second amended complaint on Nephria Bio on December 22" after counsel met and conferred on December 20, 2023. *(Id.)*. In short, Insulet sought leave to amend only two weeks after defendants produced a voluminous set of documents that (it contends) was its first opportunity to learn of the complained-of conduct. Furthermore, defendants have offered no evidence that they will be unfairly prejudiced, nor have they provided any other compelling reason why the delay will cause any undue harm.

### B. Futility

In the context of Rule 15, futility means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In assessing futility, the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Id.*

On a Rule 12(b)(6) motion, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77

(1st Cir. 1999)).  To survive a Rule 12(b)(6) motion, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  The complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

The proposed second amended complaint ("SAC") identifies Nephria Bio as a "Delaware corporation established in January 2021, majority owned by EOFlow."  (Proposed SAC ¶ 26).  It alleges that defendant Ian G. Welsford is the current CEO of Nephria Bio, defendant Luis J. Malave was the CEO of "SanPlena, LLC, a Delaware company established in December 2021, majority owned by EOFlow Inc.," and defendant Jesse Kim is the "CEO of EOFlow and EOFlow Inc. and is also CEO or otherwise effectively manages various EOFlow proxy entities, agents, and affiliates operating in the United States, including but not limited to . . . Nephria Bio" and SanPlena, LLC.  (*Id.* at 23-24, 26).

The proposed SAC alleges that "Nephria Bio and EOFlow, through Welsford, Malave, and Kim, knowingly, willfully, and maliciously received and misappropriated, and is now further misusing and misappropriating, the Insulet Trade Secrets with knowledge that the Insulet Trade Secrets were indeed trade secrets."  (Proposed SAC ¶ 75).  More specifically, the proposed SAC

4

alleges that "Malave and Kim recruited and conspired with DiIanni, and his company Coral C Ventures LLC, and Welsford's company, Nephria Bio, Inc., to further EOFlow's mission of bringing a clone product to market by leveraging the valuable and proprietary information that Insulet had created and acquired over the course of twenty years of research and development." (*Id.*).

In addition, the proposed SAC alleges that that Nephria Bio employees "acting at Kim and Malave's direction repeatedly asked for DiIanni's assistance in recreating certain aspects of the Omnipod design and Insulet's learnings in creating Omnipod." (*Id.* at ¶ 68). In responding to those requests, "DiIanni relied upon and disclosed to EOFlow and Nephria Bio the Insulet Trade Secrets, including the documents and files that he improperly retained after his employment. And Kim, Malave, Nephria Bio, and EOFlow knew that DiIanni was utilizing the Insulet Trade Secrets in the course of providing material assistance." (*Id.*).

Finally, the SAC details the alleged formation of Nephria Bio; alleges that it served as a "conduit by which EOFlow would exchange substantial payments to Welsford in the form of his annual compensation from Nephria Bio in return for laundered versions of the Insulet regulatory documents"; and alleges that "Nephria Bio hired up to a half-dozen individuals whose jobs it was to copy and reformat the Insulet confidential documents provided by Welsford." (*Id.* at ¶ 71).

The proposed second amended complaint contains sufficient facts to plausibly support the proposed claims against Nephria Bio. While some issues certainly remain unsettled—for example, whether the claim for civil conspiracy is viable in light of the doctrine that a conspiracy must involve independent agents, not employees of the same enterprise—those issues would be better resolved on a full factual record. For present purposes, the allegations are sufficient to survive scrutiny under Rule 12(b)(6), and therefore are not "futile" within the meaning of the

Rule 15 standard.

## II. Conclusion

For the foregoing reasons,

1. Plaintiff's Motion for Leave to File a Second Amended Complaint (Docket No. 232) is GRANTED.

2. The Second Amended Complaint is deemed to have been filed as of the date of the memorandum and order.

3. Defendants' Motion to Dismiss Counts III, V, VII, and IX of the Amended Complaint (Docket No. 204) is DENIED without prejudice as moot.  Defendants shall answer or otherwise respond within 21 days after the filing of the amended complaint.

**So Ordered.**

Dated:  February 5, 2024

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court