# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSULET CORPORATION,<br><br>　　　　　　　　　*Plaintiff*,<br><br>　v.<br><br>EOFLOW CO., LTD.; *et al.*,<br><br>　　　　　　　　　*Defendants*. | No. 1:23-cv-11780-FDS |

## JOINT STATUS REPORT AND AGENDA FOR APRIL 22 STATUS CONFERENCE

In advance of the April 22, 2024 status conference, the parties submit for the Court's convenience the following report setting forth the status of certain outstanding items and the parties' respective positions as to items where there is a dispute.

**Status of Items Subject to Insulet's Motion to Compel Written Discovery [ECF No. 285]**

<u>Interrogatory 11 (identification of operative versions of EOPatch 2.0 documentation)</u>

*Insulet's position*:  On March 12, 2024, in open Court, EOFlow stated that it would be supplementing this interrogatory "in the next two weeks."  EOFlow served its supplemental interrogatory response on March 26, 2024, but that response only responded to one of nine categories of documents that Insulet asked EOFlow to identify in the interrogatory.  For the remainder, EOFlow stated that production of the documentation was forthcoming and that the interrogatory response would be supplemented "after the production numbers become available."  EOFlow has yet to further supplement this interrogatory in the month since.  EOFlow should be compelled to respond to this Interrogatory.

*EOFlow's position*:  There is no dispute as to this Interrogatory.  These documents comprise a considerable volume, which is currently being processed for production.  Once produced, EOFlow intends to further supplement its response.

Document Requests 79 & 80 (disclosure of EOPatch 2.0 technical information to third parties)

*Insulet's position*:  Insulet understands that no responsive documentation has been produced since the motion to compel was filed.  Insulet has specifically requested disclosures made to regulators, business partners, and investors.  As to regulators, EOFlow appears to have only produced a complete version of the United States 510(k) for EOPatch 2.0, but has not produced complete packages of its submission for regulatory clearance to any other jurisdiction.  As to business partners, EOFlow has represented that it only has disclosed information to Medtronic and Tandem.  EOFlow still has not produced the information disclosed to Tandem.  But, more importantly, EOFlow's representation runs counter to Jesse Kim's own statement that substantial disclosures have been made to others, including EOFlow's partly owned Chinese subsidiary, SinoFlow.  *See* ECF 273-6 at 10 ("We already shared all the information we needed to, before the preliminary injunction . . . and we already cooperated with the production line preparations.").  EOFlow should be compelled to produce these documents.

*EOFlow's position*:  There is no dispute as to these Requests.  First, Insulet is incorrect when it asserts that no responsive documents have been produced since Insulet's motion was filed.  EOFlow's March 21, 2024 and April 17, 2024 productions contain many documents disclosed to certain third parties.  Second, EOFlow is investigating Insulet's claim that complete packages of submissions to non-U.S. regulatory authorities have not been produced.  If this is indeed the case, EOFlow will produce these documents.  Third, out of negotiations with Tandem's counsel related to a subpoena to produce documents, Insulet learned of a data room created between Tandem and

EOFlow.  For the first time on April 8, 2024, Insulet requested that EOFlow produce the data room.  The parties met and conferred on this request on April 12 and April 17, during which EOFlow represented it would produce this data room "in the upcoming days," as Insulet's counsel confirmed in a 6PM email on April 17.  EOFlow is currently processing these documents for production.  Lastly, Insulet raised this issue as it relates to Sinoflow for the first time on a meet and confer this week.  EOFlow is currently investigating whether and to what extent these documents have already been produced, and will make further productions if necessary.

Document Request 66 (assembly and manufacturing instructions)

*Insulet's position*: EOFlow made a production on April 17, 2024, that, it states, contains responsive documents. Insulet is still reviewing the documents in this production, but an initial analysis indicates that it only contains technical drawings with critical dimensions, manufacturing tolerances, and other specifications for a handful of EOPatch 2.0 components and does not contain the requested documentation for the manufacturing tools such as the mandrel and die mold used to manufacture the soft cannula.  The production also does not appear to contain the requested assembly order and control instructions.  If EOFlow cannot point Insulet to this documentation, it should be compelled to produce these documents.

*EOFlow's position*:  There is no dispute as to this Request.  Many documents responsive to this request overlap with the information sought in Interrogatory 11.  As stated above, these documents are currently being processed for production.

**Status of Other Items**

Insulet's Motion to Modify the Preliminary Injunction

The parties will be prepared to discuss their respective proposed Second Amended Preliminary Injunctions [ECF Nos. 353 and 354] and any questions the Court may have at the April 22 hearing.

Schedule for Patent Claims

In the interests of judicial economy, the parties respectfully propose that the Court continue to hold in abeyance the case schedule on the patent-specific issues until after the currently active claims on trade secrets and related claims are adjudicated on the merits (for example, after completion of the scheduled trial), subject to certain conditions as noted below. If the Court is amenable to this proposal in principle, the parties will promptly submit a joint proposed order to this effect.

By way of background, Insulet proposed a patent-specific case schedule earlier this year consistent with prior guidance from the Court. More recently, EOFlow proposed to continue to hold in abeyance the patent-specific case schedule so that the parties and Court can continue to focus on the currently active claims. Insulet is amenable to this proposal, subject to the following conditions and subject to the Court's approval. Specifically, with the patent-specific case schedule held in abeyance, Insulet and EOFlow agree not to oppose a motion for partial judgment on the trade secret-related claims after those claims are adjudicated on the merits and agree not to oppose as premature any motion for attorneys' fees and costs related to the trade secret-related claims on the grounds that the patent-specific claims remain pending and/or final judgment has not yet entered.

Insulet Document Production Deficiencies

*EOFlow's position*:  Insulet's witnesses have testified during depositions to the existence of relevant documents that Insulet did not previously produce and/or represented did not exist. Insulet has refused to commit to the following relevant document productions. Given upcoming depositions, EOFlow respectfully raises these issues here in the hope that they can be readily resolved without requiring burdening the Court with formal motion practice.

Insulet's improper withholding of relevant access log data.  An Insulet employee recently testified that Insulet maintains software that logs access to sensitive documentation including Insulet's purported trade secrets.  This access data is directly relevant to Insulet's trade secret claims including the extent to which the purported "trade secret" information was "known by employees and others involved in the business" as well as evidencing to the extent to which Insulet took "reasonable measures" to maintain secrecy.  *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 188 (1st Cir. 2023) (citation omitted).  The access data is readily producible, responsive to numerous RFPs (*e.g.*, RFP Nos. 14, 15, 17, 57, 79), and directly relevant to support or undermine Insulet's theory of the case.  Insulet should not be allowed to withhold potentially dispositive evidence. EOFlow did not press for this material earlier because Insulet previously answered Interrogatory No. 16 stating that "it did not maintain access logs" or "logs that would identify the additional information in the form Defendants seek," which Insulet's deposition witness corrected.  Insulet's position is that pre-generated "reports" or "logs" do not exist as stand-alone documents, but EOFlow seeks production of the relevant access-tracking data that indisputably does exist in Insulet's systems, is readily collectible and producible, and is directly relevant and responsive to Defendants' RFPs.

<u>Insulet's failure to produce competitive intelligence files.</u>  Defendants contend that Insulet's trade secret claim is barred by the three-year statute of limitations and by Insulet's failure to take reasonable measures to protect its alleged trade secrets.  Recent discovery revealed that during the relevant time period, Insulet maintained shared folders titled "EOFlow Competitor" and "Competitor Tech"—directly relevant to evidence Insulet's awareness of EOFlow and its competing product.  However, Insulet has refused to either produce the contents of those directories or to confirm that Insulet deleted those materials and that they no longer exist.

<u>Insulet's improper withholding of relevant customer complaint documentation.</u>  Insulet performs a Post Market Safety Analysis that records complaints received from customers about Omnipod products, generating reports and summaries of the complaints that it uses for product quality control.  One of Insulet's trial witnesses, Chief Medical Officer Dr. Trang Ly, specifically cited to and relied upon these materials in her recent declaration to this Court to support Insulet's contention that Omnipod is not inferior to EOFlow in certain respects for purposes of crafting remedies in this case.  *E.g.*, Dkt. 332-02 ¶ 23 ("Insulet has a Post Market Safety Analysis department that receives patient complaints from its users.  More than 65 million Omnipods were used worldwide by up to 425,000 users from January 2023 to January 2024.  During this time, both skin irritation and pain were reported for less than 0.02% of these pods.").  Insulet's senior executive Eric Benjamin also testified at deposition that the complaint data is summarized in quarterly reports for management, and Defendants have since learned that Insulet has withheld these reports from production.  Dr. Ly is scheduled to be deposed, including as a designated Rule 30(b)(6) witness, on Wednesday April 24.  Insulet refuses to produce the documentation reflecting customer complaints and related summaries and reports, despite these materials being highly relevant to Insulet's claims for relief in this case including damages and injunctive relief,

responsive to numerous RFPs (including without limitation RFP Nos. 8, 9, 78, 35, 43, 50, 51, 60, 64, 92), and affirmatively referenced and relied upon by Insulet's witnesses to self-servingly support Insulet's positions.

*Insulet's position:* Insulet objects to EOFlow shoehorning these new discovery complaints into this status report. This is especially true since, for the majority of these issues, the parties are still in the process of meeting and conferring and have not reached an impasse. Indeed, for at least one of these items, there is an outstanding request *by Insulet* to meet and confer on the topic that has not been responded to. Notwithstanding those concerns, Insulet would welcome any high-level guidance the Court may be able to provide the parties on these issues, to the extent the Court wishes to provide it. To that end, Insulet provides a brief statement of its position on these issues:

Access "logs": As Insulet's Chief Information Security Officer explained during his recent deposition, to the best of his understanding some software Insulet uses to maintain files will independently maintain information related to access or alteration of the files. Such "log" information is not, however, otherwise maintained in the course of Insulet's business; this is information that only *could* be extracted from third-party software Insulet uses to store its documents if a query is performed and only in some circumstances and for some documents.

Defendants have since requested that Insulet produce any such records maintained by this third-party software for any file "containing Insulet's trade secrets." EOFlow claims that these files are "important" because "Insulet is claiming that these documents were taken when the individual defendants left" and that these logs "would offer authoritative proof regarding that theory one way or the other." EOFlow has also argued that "one of the key factors here in determining whether something is a trade secret is how many people within Insulet had access to these documents." EOFlow's relevancy arguments are specious. Whether or not the Defendants

improperly retained Insulet confidential documents is not in question; Defendants have already produced thousands of Insulet confidential files in their own productions. EOFlow points to *Allstate* to support its assertion that it should be able to obtain discovery of these records since determining whether the information contained in these files was "known by employees" is relevant to whether they are indeed trade secrets. But this line of argument misreads *Allstate*, and the cases *Allstate* cites, which inquire into whether the information was *independently* known by employees, not whether employees learned of the information through their employment; burdensome discovery into whether Insulet employees had access to, or did access, Insulet confidential information is irrelevant to Insulet's trade secret claims here.

While the lack of relevancy of these logs is dispositive, the burden analysis is equally important. Contrary to EOFlow's representation, nothing about this information is "readily producible"; this log information, to the extent it exists, would have to be created anew by Insulet's IT department for every such file. Moreover, EOFlow has not requested this log information for any specific file, but for any file "containing Insulet's trade secrets."

Competitive intelligence files: Insulet has taken extraordinary steps to track down documents responsive to additional, informal requests from EOFlow for specific files. Indeed, with respect to this *very* issue, at EOFlow's insistence Insulet downloaded a **5 Terabyte** backup volume to gain access to a *single* file that had been referenced in, but not attached to, a produced email. What is more, that file, once obtained, was a file that had already been produced to EOFlow (it had been attached to a different email) and was *entirely* consistent with the representations that Insulet had made to EOFlow about the file's contents. In short, Insulet has produced all responsive and non-privileged documents and emails related to Insulet's understanding of EOFlow's technology from 2017 and through the filing of the complaint. Moreover, Insulet has already

undertaken more than reasonable efforts to locate additional documents responsive to EOFlow's requests, and found none. Insulet will continue to consider in good faith additional requests that go outside the scope of the searches required under the parties' agreed-to ESI protocol [ECF No. 166].

<u>Customer complaint information</u>: As required by law, Insulet maintains certain records of customer complaints. Contrary to EOFlow's representation that these complaints are "responsive to numerous RFPs," the document requests (which EOFlow conveniently omits from its position statement) plainly do not request Insulet's documentation of customer complaints. Thus, EOFlow's statement that Insulet has "withheld" anything is wrong.

If EOFlow had properly served a document request demanding the production of all customer complaints, Insulet would have objected. In view of the, at best, limited relevancy of this information to the claims and defenses in this case, the production of vast amounts of protected health information would be overly burdensome and not proportional to the needs of the case.

<u>Disputes Arising from Insulet's Inadequate Rule 30(b)(6) Preparations</u>

*EOFlow's position*: Several of Insulet's Rule 30(b)(6) witnesses were not adequately prepared to testify to their designated topics as drafted by EOFlow. Insulet should be required to designate additional witnesses to testify to the aspects of the topics their original witness could not speak to. Specifically, EOFlow seeks supplemental designated witnesses on the following topics on which Insulet did not sufficiently prepare its witness:

> **2.** All measures Insulet has taken to keep secret each alleged Trade Secret, including all measures identified in response to Interrogatory No. 3, all Insulet policies and procedures concerning trade secrets, all access logs for documents reflecting or constituting any alleged Trade Secret, and all factual bases that Insulet has not disclosed any alleged Trade Secret to the public or any third party without a binding obligation of secrecy.

8. Insulet's policies, practices, and procedures (formal or informal) regarding exit management and/or offboarding of Insulet employees, and whether and how those policies and procedures were or were not followed for each Individual Defendant, including the facts and circumstances regarding each Individual Defendants' termination of employment with Insulet.

29. Tooling and manufacture of the Omnipod, including the vendors You use in the manufacturing of the Omnipod, the documentations and materials you exchanged with these vendors, any agreements you have with these vendors, and the practices, policies, and procedures You have with these vendors.

EOFlow also seeks a supplemental designated witness to testify regarding the above-referenced "EOFlow Competitor" and "Competitor Tech" files, after Insulet either produces those materials or confirms they no longer exist, which is within the scope of multiple Rule 30(b)(6) topics relating to Insulet's awareness of EOFlow and its product and competitive/market information.

*Insulet's position*: Insulet's witnesses were adequately prepared to testify on all items on which they were designated, and EOFlow notably does not explain its basis for saying otherwise. EOFlow complains that certain witnesses "were not adequately prepared to testify to their designated topics *as drafted by EOFlow*," (emphasis added), but that is only half the story. Insulet objected that many of EOFlow's noticed 30(b)(6) deposition topics were overly broad, were ambiguous, called for only privileged testimony, and/or were irrelevant. These included topics 2, 8, and 9. As required by the federal rules, Insulet met and conferred with EOFlow with respect to Insulet's objections and proposed a narrower scope as to certain topics. During that meet and confer, Insulet made a number of additional concessions and offered to further meet and confer as to other topics. Defendants never responded or otherwise raised the issue before the depositions commenced. Accordingly, Insulet prepared each of its witnesses on the scope of examination offered by Insulet in its objections to the deposition notice, as augmented by Insulet during the meet and confer.

Insulet also does not understand EOFlow's request for Insulet to designate a new witness to testify with respect to specific files; as EOFlow notes, Insulet already produced a witness who testified *extensively* on Insulet's competitive understanding of EOFlow dating back to 2017. Should the Court wish to see the extensive testimony already provided on the requested topics, Insulet would be happy to provide annotated versions of the relevant deposition transcripts.

Respectfully submitted,

April 19, 2024

/s/ Robert D. Carroll
Robert D. Carroll (BBO# 662736)
Robert Frederickson III (BBO# 670111)
Scott T. Bluni (BBO# 660187)
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax.: (617) 321-4397
RCarroll@goodwinlaw.com
RFrederickson@goodwinlaw.com
SBluni@goodwinlaw.com

Jenny Zhang (BBO# 689838)
Matthew Ginther (pro hac vice)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Tel: (202) 346-1000
Fax: (202) 346-4444
JZhang@goodwinlaw.com
MGinther@goodwinlaw.com

James Breen (pro hac vice)
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
Fax: (212) 355-3333
JamesBreen@goodwinlaw.com

/s/ Adam S. Gershenson
Michael Sheetz (BBO #548776)
Adam S. Gershenson (BBO #671296)
Zachary Sisko (BBO #705883)
Kimberley A. Scimeca (BBO #780962)
John O. Wray (*pro hac vice*)
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300
msheetz@cooley.com
agershenson@cooley.com
zsisko@cooley.com
kscimeca@cooley.com
jwray@cooley.com

Lowell Mead (*pro hac vice*)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 495-5000
lmead@cooley.com

Elizabeth M. Flanagan (*pro hac vice*)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

Dustin Knight (*pro hac vice*)
COOLEY LLP

*Attorneys for Plaintiff Insulet Corporation*

1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004
(202) 842-7800
dknight@cooley.com

Alexandra Mayhugh (*pro hac vice*)
COOLEY LLP
Wells Fargo Center, South Tower
355 South Grande Avenue, Suite 900
Los Angeles, CA 90071
(213) 561-3250
amayhugh@cooley.com

*Attorneys for Defendants EOFlow Co., Ltd.; EOFlow, Inc.; Jesse J. Kim*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on April 19, 2024 the foregoing Joint Status Report and Agenda for April 22 Status Conference, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*/s/ Adam S. Gershenson*
Adam S. Gershenson