IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSULET CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>EOFLOW CO., LTD.; EOFLOW, INC.; NEPHRIA BIO, INC.; JESSE J. KIM (a/k/a JAE JIN KIM); LUIS J. MALAVE; STEVEN DIIANNI; and IAN G. WELSFORD,<br><br>*Defendants*. | Case No. 1:23-cv-11780-FDS |

**DECLARATION OF JOSEPH STEINBERG**

I, Joseph Steinberg, pursuant to 28 U.S.C. § 1746 and upon penalty of perjury declare as follows:

1. I have personal knowledge of the facts contained within this declaration unless otherwise specified herein, and if called as a witness, could testify competently to the matters herein.

2. I have been asked to investigate and answer the question "Could Insulet readily label, track, and produce access logs of identified 'trade secrets' by using the Varonis data security platform?"

3. The answer to that question is yes.

4. I understand the issues relevant to this declaration because, among other things, I have co-invented several technologies related to addressing online security. I have over 25 years of experience in the information security industry. I have served as the founder of two cybersecurity product companies, an architect of security strategy and secure infrastructure for multiple firms, the CEO and CISO at cybersecurity-related firms for fifteen years, and the head of technical services and product management at another firm for an additional half-decade. I have regularly written for

1

Inc. and Forbes, and authored multiple books on cybersecurity. I regularly give talks on information security and am a cybersecurity lecturer at Columbia University. My CV is attached as Exhibit A.

5.　　I have been engaged by EOFlow in the matter of *Insulet Corporation v. EOFlow Co., Ltd. et al.* (the "Current Matter"). Specifically, for the purposes of this declaration, I have been asked to provide my opinions and observations regarding the functionality of the Varonis Systems automated data security software ("Varonis") that I understand Insulet Corporation to employ. Counsel has asked me to determine if it is possible to (a) track and categorize trade secret documents in the system, (b) pull access logs for items tagged as "trade secret" in Varonis, and (c) if both (a) and (b) are possible, is there is a simple, non-burdensome way to achieve them. Based on my personal knowledge and investigation, I conclude that it is possible to track and pull access logs for trade secrets in Varonis, and that, in circumstances such as those expected at the environment of a typical 3,000-person company (such as Insulet) deploying Varonis technology to protect trade secrets  running such queries can be achieved with relative simplicity and within a relatively short period of time. I have also been asked to outline the exact steps required to export this information, which I do below in paragraphs 33–34.

6.　　I am personally familiar with Varonis based on my industry experience. In addition, in forming the opinions expressed in this declaration, I reviewed publicly available information about Varonis, including the 609-page Varonis "Datadvantage Report Reference Guide," ("DA Reporting Guide"). I attach the chapter on access logs as Exhibit B. I also met with two Varonis representatives for approximately forty-five minutes. During that meeting, to confirm my understanding, I inquired about the software's capabilities. During the meeting, the Varonis representatives conducted a live demonstration of how to categorize trade secret information within Varonis and how to export from Varonis access logs of documents categorized as trade secret information.

Based on my experience and the foregoing research, it would be simple for Insulet to export access logs from Varonis that are relevant in the Current Matter, consistent with the demonstration provided by the Varonis representatives during our meeting.

I.   **OVERVIEW OF VARONIS SOFTWARE: FUNCTIONALITY AND ACCESSIBILITY**

7. According to Insulet, it installed the Varonis software system in 2017 and still uses the software today. (Plaintiff's Opp. to Def. Motion to Compel, Ex. D, ¶ 7–8 (Whitney Decl.).)

8. Varonis is an automated data security platform. The software allows users to classify data, regulate access, and monitor file-sharing and user activity across technology servers.

9. The Varonis representatives with whom I spoke also confirmed that the core features of the software—the ability to classify and track sensitive data such as trade secret information—both existed and operated since the software's creation in 2005. Thus, although Insulet has only used Varonis since 2017, Insulet could have used Varonis as early as 2005.

10. The following diagram[1] comes from Varonis and shows a broad overview of its capabilities:

---

[1] *See* Varonis Product Datasheet – Varonis Overview (Exhibit C).



11.     As the diagram illustrates, Varonis has two features—data classification (far left) and data access governance (third from right)—that are particularly relevant. I explain each in turn below.

## II.     VARONIS' DATA CLASSIFICATION CAPABILITIES

12.     Varonis includes data discovery and classification capabilities that permit the software to automatically find, classify, and label sensitive data across a company's information systems. Such sensitive data can include, for example, personally identifiable information (PII), highly confidential legal material, and/or trade secret information.

13.     Varonis' data classification functionality contains nearly 100 pre-populated rules, such as searches for PII and HIPPA information that can be used to classify data.

14.     In addition, the software permits parties to create their own rules to discover and classify data.  This feature is particularly valuable to companies seeking to protect trade secrets that would not fall within one of the pre-populated rules, owing to the idiosyncrasies of individual trade secrets.

15.     My understanding is that unique rules can be created in as few as two steps. First, as illustrated below, the company's Varonis administrator would simply name the rule (something as simple as Trade Secret, below) and provide a description.



16.     Second, they would establish the qualifying and disqualifying keywords that cause Varonis to flag a file containing such keywords as potentially containing trade secret information.[2] The Varonis process, for at least a base level of finding and classifying trade secrets, is simple and straightforward — it requires only identifying keywords. (It can also flag documents based on file name/type, date, or location in a specific file directory, among others.) A screenshot of this functionality appears below.

---

[2] https://www.varonis.com/products/data-classification



17.     If Insulet were to use this functionality to set rules that would capture its alleged trade secrets, it could, for example, use the phrases "bill of materials," "tube nut," or "FMEA" (optionally coupled with further narrowing phrases), to cause Varonis to identify and track materials containing alleged trade secrets.

18.     With such rules in place, Varonis would identify documents within Insulet's information repositories that contained those keywords. Not only does the classification system show exactly where a company's sensitive data "lives" within a server, but it also shows exactly what type of sensitive information is contained within each document or file folder. Insulet could then restrict access to such information to only specific users. Access to such resources would also be tracked by Varonis for anomalous activity, like a mass export of data.[3]  And, Varonis can track actual access to the "trade secret" classified data, as described more below.

19.     If Insulet has been using Varonis to track its trade secrets, it will already have the rules set up to do so.  For example, I understand that Insulet asserts that various FMEAs are trade

---

[3] https://www.varonis.com/products/data-classification

secrets.[4] If Insulet is protecting those items as trade secrets, and Insulet is a Varonis customer, Insulet would have ostensibly established one or more rules to mark those items as trade secrets. Such rules may be as simple as specifying that Varonis should categorize as "trade secrets" all documents with the word "FMEA" or the phrase "Failure Modes." These rules would vary based on the detailed nature of the trade secret and could be more or less complex depending on the detailed nature of the trade secret.

20. In addition to the customizable rule function, Varonis also allows a user to classify data by applying flags, tags, or notes to any specific documents or folders.[5]



21. As the Varonis training materials explain, such classification with flags, tags, or notes is useful to understand and analyze "who can access sensitive data, where it's exposed, who is using it, and who probably owns it—everything you need to secure your sensitive data."[6]

---

[4] Plaintiff's Supplemental Identification of Trade Secrets at 13–14.

[5] https://www.varonis.com/products/data-classification

[6] https://www.varonis.com/products/data-classification

22. Thus, beyond using keywords to classify and identify specific data, Varonis also offers an alternative and perhaps even simpler approach for data identification and protection: storing highly sensitive information in specific locations that can be flagged. Such an approach has significant appeal for information that does not lend itself easily to keyword searching; as relevant to this case, that might include CAD files.

### III. DATA ACCESS TRACKING ON VARONIS

23. Once a user has set up the "trade secret" classification rule, it can easily pull access logs for all documents protected by the "trade secret" classification rule. These logs show details such as user identities, timestamps, and actions performed, helping to detect unauthorized access and prevent data breaches.

24. My investigation has demonstrated that it is straightforward and simple to pull access logs for every document that is categorized by a given rule.

25. According to Varonis, access logs give a "detailed view of file access activity, permissions changes, and group membership changes."[7] Logs show if a user changed the document, what they changed, and if they exported any of the associated information. It also shows if it is downloaded or sent via email to a third party. Thus, the Varonis access log tells someone reviewing it if an employee emailed a document categorized as trade secret information or disclosed it to a third party. *See* Ex. B 12–14. The Varonis representatives explained that these logs can be manually generated at any time with just a couple of clicks.

26. Varonis also documents whether a company has or had any pre-set data "alerts" for its unique rules, such as notifying the IT department if data flagged as trade secret information was

---

[7] Ex. B at 12. See Ex. B at 12–13 for a list of the fifteen default subcategories of information included in such a report.

accessed in an unusual manner.

27. Exporting a data report from Varonis is a straightforward and relatively quick process, as the Varonis' representatives' demonstration showed. After generating a log, the user need only click on the "Export" button in the upper right-hand corner and select the format of the export file. The information will then download to the user's local computer — a process that typically completes within seconds. A screenshot of this functionality is below:



## IV.   VARONIS' CAPABILITIES AS APPLIED TO INSULET CORPORATION

28. To the extent Insulet has set up rules to identify and categorize its alleged trade secrets, as, based on my conversation with Varonis representatives, is standard operating procedure for companies using Varonis, Insulet could readily and without undue burden export access logs for all documents categorized by such rules, or otherwise tagged as "trade secret" (or some equivalent language).

29. I understand based on my discussion with Varonis representatives that most implementations of rules will create periodic (usually weekly) reports of access logs that are emailed to the user and can be immediately downloaded. In the absence of those routine logs, a user could

query the system for a one-time report of access logs for all documents falling under a given rule.[8]

30. Varonis would also document whether Insulet has or had any pre-set data "alerts" for its unique rules that would notify the latter that its trade secret information was accessed in an unusual manner.

31. Through the user access log feature, Insulet could easily generate a complete history of all user access to a particular document or folder containing trade secret information since the software's installation in 2017.

## V. CONCLUSION

32. Based on my knowledge and investigation, in my opinion Insulet could, easily and without significant effort, track trade secrets and export access logs for documents governed by unique rules or otherwise classified as trade secrets. Based on my current understanding of the nature of the information infrastructure at Insulet, the entire process of querying, generating a report, and exporting the report for production would likely involve only a few minutes of human involvement, and be completed by computer systems in a matter of hours at most.

33. Given the complexity of this technology, Counsel has asked me what tasks could be accomplished in a non-burdensome way. The following items would likely take under an hour to do: (1) Identify what rules in Insulet's implementation of Varonis are associated with trade secrets, along with their corresponding rule conditions and permissions, and (2) produce a report of access logs for all materials that are classified under each of those trade secret categorization rules for the last twelve months. If Insulet has no trade secrets protected in Varonis, such a request would result in Insulet producing nothing more than a confirmation of that fact.

---

[8] The time needed for the Varonis system to actually generate such reports can vary based on multiple factors — but, in our case, is likely to be somewhere between seconds and several hours.

34. It is worth noting that Insulet could create new rules that would make it appear as if it were monitoring these trade secrets since 2017. For example, Insulet could (today) add a "trade secret" classification to its rule set, as doing so would only take a few minutes. Should Insulet change its rules in Varonis now, it would be problematic because it would not reflect the true evidence of what reasonable measures Insulet took prior to litigation. Thus, I would also recommend that Insulet disclose whether it has added new rules since the beginning of this litigation, and, if so, to specify the detailed nature of such rules.

I declare the foregoing under penalty of perjury this 31st day of May, 2024.

Dated: May 31, 2024

Respectfully submitted,

*/s/ Joseph Steinberg*

Joseph Steinberg

*Original signature is retained by Counsel*