UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INSULET CORPORATION,

                  *Plaintiff*,

v.

EOFLOW CO., LTD.; *et al.*,

                  *Defendants*.

No. 1:23-cv-11780-FDS

**JOINT STATUS REPORT AND AGENDA FOR JUNE 18 STATUS CONFERENCE**

The parties submit the joint agenda for the status conference scheduled for June 18, 2024.

**I.      Expert Report Timing**

The parties have a dispute over the timing of expert reports. The parties believe that adjudication of this issue at the status conference would give the parties certainty of their obligations in advance of the June 28 opening expert report deadline.

      **a.      EOFlow's Position**

Trade secrets claims are time-barred unless brought within three years of when the alleged misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. 18363(d). Federal courts addressing this statute of limitations have concluded the **plaintiff** "**has the burden of proving the discovery rule**" by showing it did not know, and could not have learned, of its injury "in the exercise of reasonable care." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc*., 920 F.3d 560, 565 (8th Cir. 2019).

As is typical, the Scheduling Order in this case provides that the party with the relevant burden files an opening expert report, to which the other side can then fairly and intelligently respond. In accordance with this law and standard procedure, EOFlow seeks an orderly, traditional

approach to the disclosure of relevant information, where the plaintiff, Insulet, discloses the steps it claims to have taken to meet the legal standard of the discovery rule in an opening report. Contrary to law and common practice, Insulet has insisted it has "no burden" on this score, refused to disclose its position in an opening report, and further demanded that EOFlow file an opening report on whether *Insulet* performed (as yet unidentified) reasonable diligence into its claims.

The chronology is undisputed. Insulet alleged the misappropriation occurred when individuals left its employ in 2010, 2010, and 2015. *See* Second Am. Compl. ¶¶ 24–25 (ECF No. 273); Insulet Fed. Cir. Response, Dkt. No. 2023-1137, Doc. 20 at 8; May 21, 2024 Tr. 26:20–21 (Insulet counsel representing same). Even if Insulet were to contend misappropriation occurred when its purported "trade secrets" were used by EOFlow in 2018, the math remains the same: Insulet filed its August 2023 suit five years later, which is more than three years after the alleged misappropriation. The *only* way Insulet can contend its claim was timely is by proving it could not have discovered misappropriation through reasonable diligence.

EOFlow plans to introduce expert testimony on this issue of what constitutes reasonable diligence in these commercial circumstances, but Insulet is insisting, contrary to law, that somehow the defendant EOFlow must do so in an *opening* report—even though the meaningful burden rests with Insulet. Insulet premises its flawed, formalistic argument on a single word in the scheduling order indicating that the party with the "initial" burden must file the opening (June 28) brief on an issue. Insulet is wrong for three primary reasons. ***First***, there is no need for expert testimony on whether the alleged misappropriation occurred more than three years before Insulet filed suit, the only point on which EOFlow holds any burden. That point is uncontested.

***Second***, the actual burden at issue—the need to show reasonable diligence, and what could and could not have been discovered—rests squarely with Insulet. This diligence, or lack thereof,

also informs the analysis of whether plaintiff took reasonable measures so as to assert a claim to protectable trade secrets. *See*, *e.g.*, *Pie Dev., LLC v. Pie Ins. Holdings, Inc.*, 2023 WL 2707184, at *3 (5th Cir. Mar. 30, 2023) (delay of two years without filing suit barred trade secret claim); *HiRel Connectors, Inc. v. United States*, 2005 WL 4958547, at *4–5 (C.D. Cal. Jan. 4, 2005) (holding that trade secret protection is lost even if a plaintiff spent "many years of diligent efforts to maintain confidentiality if, through voluntary action or inadvertence, [the owner] ceases those efforts" for "months or years," allowing "competitors to locate and use these secrets").

**Third**, as a matter of law and logic, EOFlow cannot know what efforts Insulet contends represented "reasonable diligence" under the commercial circumstances and cannot be expected to prove a negative on every action Insulet could or could not have taken. This is especially important because Insulet's documents, which Insulet produced only *after* the injunction phase, have confirmed that Insulet was fully and completely on inquiry notice, at the company's highest levels—C-suite included—more than three years before filing suit.

Courts have consistently held that the *plaintiff* has the burden to demonstrate that its claim survives under the discovery rule. *See, e.g.*, *CMI Roadbuilding*, 920 F.3d at 565 (plaintiff "has the burden of proving the discovery rule tolls application of the statutory bar" under DTSA)[1]; *B&P Littleford, LLC v. Prescott Machinery, LLC*, 2021 WL 3732313 at *4 (6th Cir. Aug. 24, 2021) (under DTSA, once a defendant has shown that three years passed from the date of misappropriation to the filing of the suit, "the burden shifts to the plaintiff to establish an exception to the statute of limitations."); *Balmuccino, LLC v. Starbucks Corporation*, 2023 WL 4761447, at *8 & n.7 (W.D. Wash. July 26, 2023) (dismissing plaintiff's DTSA claim with prejudice and recognizing the "party asserting equitable tolling bears the burden of proof").

---

[1] The trial court in this case ordered that the plaintiff must file all expert reports first.

3

Insulet's explicit, repeatedly stated position in conferral, that "[t]here are no 'portions of SOL on which Insulet has the burden'" is flat wrong. Although the statute of limitations is generically speaking an affirmative defense, the discovery rule places the "burden [] on the plaintiff to prove 'both the actual lack of knowledge and the objective reasonableness of that lack of knowledge during the tolling period," *Abdallah v. Bain Cap. LLC*, 880 F. Supp. 2d 190, 195 (D. Mass. 2012), *quoting D.B. Zwirin Special Opportunities Fun L.P. v. Mehrotra*, No. 10-10979, 2001 WL 317752, at *1 (D. Mass. Jan. 31, 2011). State law concerning the discovery rule and the application of reasonable diligence holds the same.[2] *Riley v. Presnell*, 409 Mass. 239, 243–44 (1991) ("Once the defendant pleads the statute of limitations and establishes that the action was brought more than three years from the date of the injury, the burden of proving facts that take the case outside the impact of the statute falls to the plaintiff."); *Holtzman v. Proctor, Cook & Co.*, 528 F. Supp. 9, 14 (D. Mass. 1981) (under the discovery rule, "the burden is on the plaintiffs to establish that they ha[d] complied with the statutes of limitations.").

As a practical matter, Insulet cannot force EOFlow to rebut every possible effort Insulet might have made. The parties should follow the standard, properly ordered exchange of information, starting with Plaintiff's assertions and Defendants' responses. Given the established burdens under the law, if Insulet plans to provide expert testimony on its "reasonable" diligence to toll the statute of limitations, it must do so in an opening report.

b.   **Insulet's Position**

The operative scheduling order is clear: "the party with *the initial burden of proof* on the subject matter" must serve an opening expert report on that subject matter by June 28. ECF No. 371 (emphasis added). Here, the relevant "subject matter" is Defendants' statute-of-limitations

---

[2] Courts routinely look to state law to interpret the DTSA, and "Massachusetts trade secret law is nearly equivalent to the DTSA." *Mavel, a.s. v. Rye Development*, 626 F. Supp. 3d 331, 339 (D. Mass. 2022) (Saylor, C.J.).

4

defense. Defendants indisputably have "the initial burden of proof" on that question—as other trade-secret-misappropriation cases in this District have confirmed. *See, e.g.*, *Orbusneich Med. Co. v. Bos. Sci. Corp.*, No. 09-10962-RGS, 2011 WL 1086015 (D. Mass. March 21, 2011) ("The statute of limitations is an affirmative defense on which defendants bear *the initial burden of proof.*" (emphasis added)); *Armen Dallakian v. IPG Photonics Corp.*, No. 13-cv-11863-TSH, 2014 WL 3109964, at *2 (D. Mass. July 7, 2014) ("Because the statute of limitations is an affirmative defense [defendant] bears *the initial burden of proof.*" (emphasis added)). Therefore, to the extent Defendants believe the application of the statute of limitations is a proper subject of expert testimony—a question on which Insulet takes no position at this time—Defendants must serve an opening expert report on that issue by June 28.

Defendants ask the Court to flip this usual order. In particular, they argue that Insulet should preemptively address the statute of limitations in an opening report—due just two weeks from the date of this submission—because, although the ultimate burden of proof on the statute of limitations rests with Defendants, the burden on the discovery rule may shift to Insulet. But the burden would only shift once Defendants have made a *prima facie* showing—as Defendants' own cases make clear. *See, e.g.*, *B&P Littleford, LLC v. Prescott Mach., LLC*, No. 20-1449, 2021 WL 3732313, at *4 (6th Cir. Aug. 24, 2021) ("If the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations."). In other words, Defendants still bear the *initial* burden—exactly as the scheduling order contemplates by sequencing the expert reports based on which party bears the "initial burden." The Court's decision in *Palomar Techs., Inc. v. MRSI Sys., LLC*, No. 18-cv-10236-FDS, 2020 WL 2115625 (D. Mass. May 4, 2020), confirms the point. In analogizing the defense of estoppel to the statute of limitations, the Court explained:

5

> [T]he most sensible solution is to allocate the burden of proof in a manner similar to statutes of limitations and discovery rules: that is, the *initial burden* to assert estoppel should be on the party seeking to invoke it (by raising it as a defense, and making a *prima facie* showing that it applies), after which the burden shifts to the responding party to show that the prior-art reference could not reasonably could have been raised in the IPR proceeding.

*Id.* at *4 (emphasis added).  Here, because the initial burden determines the appropriate sequence under the scheduling order, Insulet is not required to anticipate Defendants' statute-of-limitations defense in its opening report.  It is Defendants' obligation to make the first move.

Defendants' contention that requiring them to go first will deprive them of the ability to "fairly and intelligently respond" to any expert opinion Insulet might offer on the discovery rule is a red herring.  Under the scheduling order, "the party with the initial burden of proof on the subject matter" has until August 7 to file a reply report.  ECF No. 371.  To the extent Insulet's responsive expert reports address the discovery rule, Defendants will have an opportunity to offer appropriate responses in their reply reports.

At bottom, Defendants' request to deviate from the plain language of the scheduling order appears to be an attempt to secure an unfair procedural advantage.  Defendants first raised the possibility of an alternative sequence on June 10, just 18 days before opening reports are due.  And this conference will not occur until 10 days before opening expert reports are due.  Defendants are trying to foist onto Insulet the responsibility for producing, on an extremely short and unanticipated timetable, an opening expert report on an affirmative defense on which it does not bear the initial burden.  Defendants' attempt to depart from the plain language of the scheduling order and to require Insulet to serve an expert report in less than two weeks on an issue on which it does not bear the initial burden would be fundamentally unfair to Insulet.

**II.    Other Discovery Issues Not Yet at Impasse**

The following issues are ones the parties have raised but not yet come to impasse.

1. Insulet has requested samples of a tool that is used by EOFlow to manufacture the soft cannula. EOFlow is investigating this matter and considering this request.

2. Insulet has requested all metadata for the CAD file that Steven DiIanni provided to EOFlow in 2018, including metadata that would show who from EOFlow accessed the file and at what time. EOFlow is investigating this matter and considering this request.

3. Nephria Bio states that it cannot produce certain regulatory and quality documentation because those documents are the property of the "client," EOFlow, not Nephria. Insulet's position is that these documents should now be produced by EOFlow. Insulet intends to negotiate with EOFlow regarding the production of these documents in the coming days. EOFlow's position is that EOFlow has only heard of this for the first time in this status report, and will—as always—meet and confer with opposing counsel regarding any such requests.

4. Insulet has discovered that Nephria Bio employees maintained EOFlow email accounts, which they were instructed to use during their time at Nephria Bio. Insulet maintains, for the reasons explained in its recently filed motion for an adverse inference [D.I. 411], that the production of these emails (if they still exist) is particularly necessary. Insulet intends to negotiate with EOFlow regarding the production of these documents in the coming days. EOFlow's position is that EOFlow has only heard of this for the first time in this status report, and will—as always—meet and confer with opposing counsel regarding any such requests, but that those email accounts have been known to all parties since last year.

5. Portions of Nephria Bio's production are unusable and unreadable. Insulet intends to continue to assess its options with respect to these deficient productions. Nephria Bio's position is that Nephria Bio has only heard of this for the first time in this status report, and will—as always—meet and confer with opposing counsel regarding any such requests.

6. Following the Court's ruling on the motion to compel what EOFlow has referred to as a "trade secret inventory," which description Insulet disputes as inaccurate [*see* Dkt. Nos. 379, 385], EOFlow may request to depose the custodian of that file for a short deposition. This issue is not yet ripe because the motion is still pending.

7. Defendants have objected to Insulet's supplemental interrogatory responses on the ground that the responses continue to claim, contrary to law, that all Insulet confidential documents are trade secrets. Insulet disputes Defendants' characterization and conclusions. The parties have met and conferred, and Insulet will consider supplementing its interrogatory responses after serving its opening expert reports.

8. Insulet has disclosed Dr. Cortez McBerry pursuant to Paragraph 12 of the Protective Order in this case. Defendants state that they have concerns about Dr. McBerry based on prior consulting work he performed for a non-party. The parties are still engaging in the meet and confer process; however, given the fast approaching deadline for opening expert reports, resolution of this potential dispute is time-sensitive.

Dated: June 14, 2024

COOLEY LLP

*/s/ Adam S. Gershenson*
Michael Sheetz (BBO #548776)
Adam S. Gershenson (BBO #671296)
Kimberley A. Scimeca (BBO #780962)
Zachary Sisko (BBO #705883)
John O. Wray (*pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300
msheetz@cooley.com
agershenson@cooley.com
kscimeca@cooley.com
zsisko@cooley.com
jwray@cooley.com

INSULET CORPORATION

By its attorneys,

/s/ *Robert D. Carroll*
Robert D. Carroll (BBO No. 662736)
Robert Frederickson III (BBO No. 670111)
Scott T. Bluni (BBO No. 660187)
Gerard J. Cedrone (BBO No. 699674)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
RCarroll@goodwinlaw.com
RFrederickson@goodwinlaw.com
SBluni@goodwinlaw.com
GCedrone@goodwinlaw.com

Jenny Zhang (BBO No. 689838)
Matthew Ginther (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-1000
JZhang@goodwinlaw.com
MGinther@goodwinlaw.com

Alexandra D. Valenti (*pro hac vice*)
James Breen (*pro hac vice*)
Timothy Keegan (*pro hac vice*)
Arshjit Raince (*pro hac vice*)
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
AValenti@goodwinlaw.com
JamesBreen@goodwinlaw.com
TKeegan@goodwinlaw.com
ARaince@goodwinlaw.com

 *Attorneys for Plaintiff Insulet Corporation*

Lowell Mead (*pro hac vice*)
Reuben Chen (*pro hac vice*)
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 495-5000
lmead@cooley.com
rchen@cooley.com

Elizabeth M. Flanagan (*pro hac vice*)
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

Dustin Knight (*pro hac vice*)
1299 Pennsylvania Ave, NW, Suite 700
Washington, DC 20004
(202) 842-7800
dknight@cooley.com

Alexandra Mayhugh (*pro hac vice*)
Wells Fargo Center, South Tower
355 South Grand Ave. Ste. 900
Los Angeles, CA 90071
(213) 561-3250
amayhugh@cooley.com

*Counsel for Defendants EOFlow Co., Ltd.; EOFlow, Inc.; and Jesse J. Kim*

DONNELLY, CONROY & GELHAAR, LLP

*/s/ T. Christopher Donnelly*
T. Christopher Donnelly (BBO #129930)
Nathaniel R.B. Koslof (BBO #691094)
260 Franklin Street, Suite 1600
Boston, MA 02110
(617) 720-2880
tcd@dcglaw.com
nrbk@dcglaw.com

*Attorneys for Defendants Luis J. Malave, Steve DiIanni, and Ian G. Welsford*


LAMBERT, SHORTELL & CONNAUGHTON

9

<u>/s/ *Brendan M. Shortell*</u>
Brendan M. Shortell (BBO #675851)
Justin P. Tinger (BBO #707807)
100 Franklin St., Ste. 903
Boston, MA 02110
shortell@lambertpatentlaw.com
tinger@lambertpatentlaw.com

*Attorneys for Defendant Nephria Bio, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, in accordance with Local Rule 5.2(b), the foregoing was caused to be served upon counsel for the parties by CM/ECF filing system.

*/s/ John O. Wray*
John O. Wray

*Counsel for Defendants EOFlow Co., Ltd.; EOFlow, Inc.; and Jesse J. Kim*