UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSULET CORPORATION, ) ) Plaintiff, ) ) v. ) ) EOFLOW CO., LTD., et al., ) ) Defendants. ) | Civil Action No. 23-11780-FDS |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

**SAYLOR, C.J.**

This dispute concerns the misappropriation of trade secrets for the design and manufacture of an insulin patch pump, the Omnipod, produced by plaintiff Insulet Corporation. Plaintiff sued seven defendants: EOFlow Co., Ltd., and EOFlow, Inc. (collectively, "EOFlow"); Nephria Bio, Inc.; EOFlow's Chief Executive Officer, Jesse Kim; and three former Insulet employees, Luis Malave, Steven DiIanni, and Ian Welsford.

After a month-long trial, a jury returned a verdict on December 3, 2024, finding six defendants liable for misappropriation of trade secrets. The jury awarded plaintiff $452 million in total damages.

Before the start of trial, on September 4, 2024, the Court granted plaintiff's motion under Fed. R. Civ. P. 37(e)(2) for an adverse-inference instruction against Welsford, Nephria Bio, and EOFlow in connection with Welsford's spoliation of evidence. (ECF No. 532). Plaintiff then filed a motion seeking $228,905.85 in attorneys' fees and $50,242.00 in litigation expenses

related to the spoliation. The motion also seeks a finding of joint-and-several liability against the defendants to whom the adverse inference applies.

For the following reasons, the Court will award plaintiff $91,966.88 in fees and costs, which will be imposed against Welsford, Nephria Bio, and EOFlow jointly and severally.

**I.     Background**

Plaintiff's motion for an adverse-inference instruction alleged, among other things, that Welsford had authorized the deletion of all server-stored data associated with multiple Nephria Bio employee accounts shortly after he was notified of the litigation. The parties initially disputed the scope of the alleged spoliation, but appeared to have settled on four employee accounts—those belonging to Joshua Terry, James Neff, Morgan Neff, and Neave Flint—to be the subject of plaintiff's motion. Other Nephria Bio accounts, including one belonging to Paul Hamm, had been deleted several months prior to the litigation as part of their layoffs from the company, and were not part of Welsford's alleged spoliation.

The Court granted plaintiff's motion, finding that Welsford intentionally destroyed evidence after a duty arose to preserve files for litigation. Under Rule 37(e), the Court elected to give an adverse-inference instruction at trial that would apply against Welsford, EOFlow, and Nephria Bio, as Welsford—who, at the time, was EOFlow's Chief Technology Officer and Nephria Bio's Chief Executive Officer—acted as an agent of those corporate entities in spoliating the evidence.

The Court went on to state that it would "award reasonable attorney[s'] fees and costs incurred in connection with the motion for spoliation, which presumably will include the costs of that portion of any forensic analysis that was reasonably necessary for the bringing of [the adverse-inference] motion." (Sept. 4, 2024 Hr'g Tr. 15:2-5).

Plaintiff submitted a motion for attorneys' fees on September 18, 2024, that included evidence of attorney time entries and third-party invoices. Plaintiff seeks to recover four sets of expenses: (1) fees related to its motion to compel the forensic inspection and analysis of Hamm's laptop; (2) costs paid to a third party to conduct that forensic inspection and analysis; (3) fees incurred due to Nephria Bio's deficient document production; and (4) fees related to preparing its motion for an adverse-inference instruction.

In total, plaintiff requests $228,905.85 in attorneys' fees and $50,242.00 in litigation expenses related to the spoliation. In addition, the motion seeks a finding of joint-and-several liability against Welsford, Nephria Bio, and EOFlow.

## II. Analysis

### A. Reasonable Attorneys' Fees

It is undisputed that in this Circuit "[t]he lodestar approach is the method of choice for calculating fee awards." *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). The lodestar approach "requires the district court to ascertain the number of hours productively expended and multiply that time by reasonable hourly rates." *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). The party seeking the award bears the burden of establishing both the time and rate components of the calculation, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and may do so by providing "contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel," *Id.* (citing *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001)).

In fashioning the lodestar, a court first determines "how much compensable time counsel spent on the case, deleting any 'duplicative, unproductive, or excessive hours.'" *Spooner*, 644 F.3d at 68 (quoting *Gay Officers Action League*, 247 F.3d at 295). "[T]he court has a right—indeed, a duty—'to see whether counsel substantially exceeded the bounds of reasonable

3

effort.'" *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (quoting *Pilkington v. Bevilacqua¸* 632 F.2d 922, 925 (1st Cir. 1980)). However, the court need not limit the award to only those fees that "directly relate[] to [the] motion for spoliation of evidence," but instead may also award fees stemming from "[t]hose efforts [that] were a predictable result of the spoliation." *NuVasive, Inc. v. Day*, 77 F.4th 23, 32 (1st Cir. 2023) (internal quotations omitted).

After determining the number of hours reasonably expended, a court then multiplies the compensable time by the prevailing rates in the community, thereby yielding the lodestar amount. *Gay Officers Action League*, 247 F.3d at 295. In deciding a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Hefter Impact Techs., LLC v. Sport Maska, Inc.*, 2017 WL 5798642, at *2 (D. Mass. Nov. 28, 2017) (quoting *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984)).

Although the calculated lodestar amount "represents a presumptively reasonable fee," *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992), a court retains "extremely broad" discretion to adjust it up or down based on other factors not captured in the calculation, *see, e.g.*, *Pérez-Sosa v. Garland*, 22 F.4th 312, 320-21 (1st Cir. 2022). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3) (internal quotations omitted).

In this case, the Court will award reasonable fees and costs incurred in connection with plaintiff's motion for an adverse-inference instruction, including fees resulting from reasonably necessary forensic analyses. Thus, plaintiff is entitled to recoup fees that it would not otherwise have incurred in this litigation except for the fact that it had to bring its motion. *See Hefter Impact Techs*, 2017 WL 5798642, at *3.

### B.   Fees Related to the Motion to Compel the Inspection of Hamm's Laptop

Plaintiff seeks $61,434.10 for time spent analyzing defendants' production of files from Hamm's laptop, conferring with defendants' counsel regarding deficiencies in those files, and preparing for and arguing a motion to compel a forensic inspection and analysis of the laptop. Even though plaintiff was not aware of any spoliation when it filed its motion to compel on January 12, 2024, it nonetheless contends that the listed costs associated with obtaining Hamm's laptop were a "foreseeable result of the [Welsford] spoliation" and should therefore fall within the ambit of recoverable fees. (Memo. Supp. Mot. Adv. Inf. at 7).

To support its position, plaintiff contends that Welsford's spoliation led to the deficiencies in defendants' production of Hamm's files in discovery, which in turn required plaintiff to file a motion to compel production of Hamm's laptop, because it knew that his laptop contained confidential information. Plaintiff then discovered that Hamm, too, had spoliated electronic files.

The problem with that argument is that Hamm's files were not spoliated by Welsford. Although the Court's adverse-inference order addressed evidence deleted by Welsford *after* litigation had commenced, Hamm's Nephria Bio account had been deleted in the ordinary course of his layoff months *before* the start of litigation. Hamm's account was therefore not a part of the evidence spoliated by Welsford.

5

Thus, even if it is true, as plaintiff suggests, that the deletion of Hamm's account made his laptop the best source of evidence of Nephria Bio's work for EOFlow, plaintiff's efforts to compel production of his laptop were ultimately based on actions that fall beyond the scope of the Court's order. For that reason, the Court will not factor any attorneys' fees incurred in connection with the motion to compel the inspection of Hamm's laptop into the lodestar calculation.

### C. Fees Related to the Forensic Analysis of Hamm's Laptop

As a related matter, plaintiff seeks $50,242 for expenses incurred in connection with the third-party forensic analysis of Hamm's laptop. The fees include both work performed by a third-party vendor and attorney time spent coordinating that analysis.

Again, plaintiff cannot recover the expenses incurred to perform the forensic analysis of Hamm's laptop. Defendants' deficient production of Hamm's documents led plaintiff to engage a forensic vendor to analyze the laptop. But again, Hamm's deleted files were not among those spoliated by Welsford, and so the forensic analysis of his laptop cannot be described as a "predictable result of the spoliation." *NuVasive*, 77 F.4th at 32.

Moreover, although the Court allowed for the possibility that plaintiff may recover the costs of any forensic analyses that it performed, it made clear that any such costs had to be "reasonably necessary for the bringing of [the adverse-inference] motion." (Sept. 4, 2024 Hr'g Tr. 15:2-5). Plaintiff has not indicated how, if at all, the forensic analysis of Hamm's laptop was reasonably necessary to bring that motion, or how the analysis revealed any information about the Welsford spoliation. Thus, plaintiff has not met its burden and cannot recover the costs incurred to perform a forensic analysis of Hamm's laptop.

### D. Fees Related to Nephria Bio's Deficient Document Production

Next, plaintiff seeks $21,456.57 in fees related to its review of Nephria Bio's deficient production of documents. It contends that the discovery initially produced by Nephria Bio was so defective that it required 23.1 additional attorney hours (beyond its ordinary discovery work) to sift through corrupted files, review emails produced without attachments, and correspond with Nephria Bio's counsel to resolve those issues. It contends that the production complications resulted from the spoliation and should therefore qualify for fee reimbursement.

The Court does not doubt that Welsford's deleted evidence likely caused plaintiff additional delay and expense in its review of the Nephria Bio production. The Court will therefore permit recovery of fees for the incremental efforts that plaintiff had to undertake during discovery that "were a predictable result of the spoliation." *NuVasive*, 77 F.4th at 32.

However, the amount of incremental attorney time incurred solely because of the Welsford spoliation is not readily apparent. Plaintiff's billing records fail to distinguish between time spent addressing production issues stemming from the Welsford spoliation and time spent engaging in ordinary discovery work. The Court recognizes that plaintiff's time records were created before the adverse-inference motion was filed, but plaintiff has done little to connect specific work performed to the spoliation itself. It is true that plaintiff has provided certain email and letter correspondences with Nephria Bio's counsel that appear to address discovery issues likely caused by spoliation, but even those correspondences raise other points that are unrelated to the deleted evidence. Thus, even though some of the discovery delays undoubtedly arose from the spoliation, plaintiff has not met its burden of establishing that all of its requested incremental discovery efforts were the product of the spoliation.

The Court will therefore reduce the requested attorney time reviewing deficient Nephria Bio production by 50% to 11.55 hours. Defendants do not challenge the rate charged by

7

plaintiff's counsel, and because the overwhelming majority of the reported discovery hours were conducted by attorney Ginther at $924.50/hour, the Court will apply his rate to the lodestar calculation. Thus, the lodestar amount for the incremental discovery time necessitated by the spoliation is $10,677.98.

With the lodestar calculation in hand, the Court turns to the factors that may justify an adjustment to the fee award. Here, the factors do not support any such adjustment. The time and labor required to conduct the additional discovery is not much more than the typical work performed in litigation. Nor does the additional discovery work present particularly novel or difficult questions. The remaining factors either do not apply to this case or are already captured in the rates charged by plaintiff's counsel. The Court will therefore award plaintiff $10,677.98 for the extra discovery work it undertook as a result of the spoliation.

### E. Fees Related to the Motion for an Adverse-Inference Instruction

Plaintiff next contends that it is entitled to $146,015.18 in attorneys' fees related to the spoliation portion of its motion for an adverse-inference instruction.[1] To support that figure, plaintiff has provided time entries for attorneys Carroll (billing at $1,376/hour), Frederickson ($1,204/hour), Keegan ($1,019.10/hour), Ginther ($924.50/hour), and Maor ($662.20/hour). Plaintiff represents that it limited its fees to those billed by the five attorneys who worked most closely on the motion. According to the records before the Court, the total time those attorneys spent on the spoliation portion of the motion comes to 143.7 hours.

Defendants again do not challenge the rates charged by plaintiff's counsel. Instead, defendants contend that the hours reported are excessive. The Court agrees that the overall time

---

[1] Plaintiff's motion for an adverse-inference instruction addressed two issues: (1) Welsford's spoliation of evidence and (2) EOFlow's late production of a computer-aided design ("CAD") file. The Court permitted a fee award only for Welsford's spoliation, and therefore the fee award must exclude work conducted in connection to the CAD file production issue.

spent on the motion is excessive, as counsel appear to have spent more than three-and-a-half weeks of attorney time on what amounts to roughly 25 pages of total briefing between the opening and reply briefs, plus preparation for and attendance at the motion hearing.

The Court finds that 143.7 hours is an unreasonable expenditure of time for a relatively short, straightforward motion and argument. Eighty hours of attorney time is a more appropriate amount to spend on such a motion. Thus, the Court will reduce the time apportioned to the spoliation portion of the motion from 143.7 hours to 80 hours. Applying the same hourly rate charged by plaintiff's attorneys to the revised hours total yields a proportionately reduced lodestar of $81,288.90.[2]

Again, having determined the lodestar amount, the next step is to apply whatever adjustment might be appropriate to the fee award. And again, no such adjustment is warranted. Although it is true that plaintiff obtained the relief it sought, spoliation issues are not particularly novel or difficult, and no other factor provides a basis for modifying the award. The Court will therefore award plaintiff $81,288.90 for bringing its motion for an adverse-inference instruction.

### F.     Joint-and-Several Liability

Finally, plaintiff requests that the fee award be imposed jointly and severally on Welsford, Nephria Bio, and EOFlow. When a plaintiff prevails against multiple defendants on an issue, the court may, in its reasoned discretion, order the fee award to run jointly and severally against the defendants. *See Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 337 (1st Cir. 2008).

Here, Welsford personally executed the spoliation at issue, but the Court nevertheless gave an adverse-inference instruction against Nephria Bio and EOFlow as well. As a high-ranking officer of both EOFlow and Nephria Bio, Welsford acted as an agent of both entities in

---

[2] 80 adjusted hours ÷ 143.7 reported hours = 0.557 hours ratio. 0.557 hours ratio × $146,015.18 requested fee = $81,288.90 adjusted fee.

9

approving the deletion of the employee accounts, and the corporate entities benefitted from the spoliation. And although defendants assert that EOFlow was unaware of Welsford's spoliation when it occurred, EOFlow did nothing to inform Welsford of his duty to maintain records until after he deleted the accounts, even though they were represented by the same legal counsel from the beginning. Thus, for the purposes of the spoliation award, the Court will impose the fee on Welsford, Nephria Bio, and EOFlow jointly and severally.[3]

### III.  Conclusion

For the foregoing reasons, plaintiff Insulet Corporation is awarded $10,677.98 in fees and expenses for the incremental discovery that it had to perform due to the spoliation and $81,288.90 for the fees and expenses incurred to bring the motion for an adverse-inference instruction. The total award of $91,966.88 is imposed against defendants Ian Welsford, Nephria Bio, Inc., EOFlow Co., Ltd., and EOFlow, Inc., jointly and severally.

**So Ordered.**

|  |  |
|---|---|
| Dated:  December 23, 2024 | /s/  F. Dennis Saylor IV<br>F. Dennis Saylor IV<br>Chief Judge, United States District Court |

---

[3] At least arguably, that determination is inconsistent with the Court's refusal to impose joint-and-several liability on Welsford and the corporate entities for the unjust enrichment caused by their misappropriation of trade secrets. The situations, however, are distinguishable. In a trade-secret misappropriation case where damages are based on unjust enrichment, traditional equitable principles suggest that joint-and-several liability is proper only when the defendants act as "partners engaged in concerted wrongdoing," evidenced by their shared enjoyment of the fruits of the misappropriation. *See BioPoint, Inc. v. Dickhaut*, 110 F.4th 337, 352 (1st Cir. 2024). But Welsford held no stock in EOFlow and received marginal economic benefit, if any, from his participation in the scheme. Thus, holding Welsford jointly and severally liable with EOFlow—an entity that reaped millions of dollars-worth of benefits from the scheme—for trade-secret misappropriation would have been inappropriate and against traditional principles of equity.

Here, however, Welsford, Nephria Bio, and EOFlow all benefitted from the spoliation. The deleted files plausibly contained information that would have been damaging to each party, leading the Court to give an adverse-inference instruction against them all. And again, as an agent of both Nephria Bio and EOFlow at the time, Welsford's actions may be fairly attributable to his principals. Therefore, holding Welsford and the corporate entities jointly and severally liable solely for the attorneys' fees related to the spoliation is consistent with equitable principles.