**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **INSULET CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EOFLOW CO., LTD.; EOFLOW, INC.; NEPHRIA BIO, INC.; and JESSE KIM,**<br><br>**Defendants.** | **Civil Action No.**<br>**23-11780-FDS** |

**PERMANENT INJUNCTION**

**SAYLOR, C.J.**

After a trial, and after careful consideration of the written submissions of the parties, the Court hereby enjoins defendants EOFlow Co., Ltd.; EOFlow, Inc.; Nephria Bio, Inc.; and Jesse Kim as follows:

1. **Definition of "Insulet."** The term "Insulet" means Insulet Corporation.

2. **Definition of "Defendants."** The term "Defendants" means the following persons or entities:

   a. EOFlow Co., Ltd.;

   b. EOFlow, Inc.;

   c. Nephria Bio, Inc.; and

   d. Jesse Kim.

3. **Definition of "EOFlow."** The term "EOFlow" means the following entities:

   a. EOFlow Co., Ltd.; and

b. EOFlow, Inc.

4. **Definition of "Trade Secrets."** The term "Trade Secrets" means the following trade secrets of Insulet:

   a. the Computer-Aided Design files for the Omnipod, including the file 13800-POD-ASSEMBLY-ASM ("CAD");

   b. the design and manufacturing process for the Omnipod soft cannula;

   c. the occlusion detection algorithm for the Omnipod ("ODA"); and

   d. the Design History File for the Omnipod Eros ("DHF").

5. **Applicability to Representatives of Defendants.** This injunction applies to any officers, agents, servants, employees, or attorneys of any of the Defendants, as well as any other persons who are in active concert or participation with any of them who receive actual notice of this injunction by personal service or otherwise.

6. **Prohibition on Manufacture, Sale, and Related Activities.** Defendants are hereby enjoined from manufacturing, marketing, advertising, selling, distributing, or seeking regulatory approval for any product that was designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets, anywhere in the world, except as provided in Paragraphs 10 and 11.

7. **Prohibition on Possession.** Defendants are hereby enjoined from possessing any of the Trade Secrets, anywhere in the world, except as reasonably necessary for the purposes provided in Paragraphs 10 and 11.

8. **Prohibition on Disclosure.** Defendants are hereby enjoined from disclosing any of the Trade Secrets to any third party, anywhere in the world, except as provided in Paragraph 14.

9. **Notice to Third Parties.** Within seven days of entry of this injunction, Defendants shall provide written notification of this injunction and the final judgment entered in this case to any third party to whom Defendants communicated or distributed any Trade Secret. Defendants shall also request that the third parties return, destroy, or refrain from using any Trade Secret in their possession henceforth. Within 14 days of entry of this injunction, Defendants shall provide Insulet with a copy of all notices provided to third parties along with certified receipts of delivery of those notices.

10. **Temporary Exception and Notice for Existing Korean Patients.** Notwithstanding the foregoing, Paragraphs 6 and 7 shall not apply for a period of six months (that is, until October 24, 2025) to the manufacture, sale, and distribution in the Republic of Korea of EOFlow products designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets; provided, however, that EOFlow (a) may not export such products from the Republic of Korea, except as provided in Paragraph 10, and (b) may not market or promote such products to prospective or new patients in the Republic of Korea or elsewhere. Defendants shall provide notice to existing EOFlow patients in the Republic of Korea of this injunction and the duration of the temporary exception to allow for transition to alternative means of medical care.

11. **Temporary Exception and Notice for Existing EU Patients.** Notwithstanding the foregoing, Paragraphs 6 and 7 shall not apply for a period of six months (that is, until October 24, 2025) to the sale and distribution of EOFlow products designed, developed, or manufactured, in whole or in part, using or relying on the Trade Secrets to patients residing in the European Union who were using such products as

of October 6, 2023, pursuant to a written prescription or other written order from a physician or other licensed health-care provider. Defendants shall provide notice to existing EOFlow patients in the European Union of this injunction and the duration of the temporary exception to allow for transition to alternative means of medical care.

12. **Transfer of Patent Application.** Within 60 days of entry of this injunction (or at such other time as mutually agreed to by the parties in writing), EOFlow shall assign to Insulet US 2023/0248902A1, any patent applications submitted in any jurisdiction that disclose the same invention, and any patents that issue from US 2023/0248902A1 or patent applications that disclose the same invention.

13. **Transfer of Medtronic Termination Fee.** Defendants shall hold, as constructive trustees for Insulet, any payment received from Medtronic PLC relating to its terminated acquisition agreement with EOFlow. Defendants shall transfer to Insulet any such payment within 14 days of receipt from Medtronic PLC or, if this litigation remains pending at that time, within 14 days of the termination of this litigation and any related appeal. Any such amount paid to Insulet shall be credited toward the amount of any money judgment owed to Insulet as a result of this proceeding.

14. **Removal and Quarantine of Information.** Upon entry of this injunction, Defendants shall undertake the following steps to remove from their possession, and to quarantine, any information associated with the Trade Secrets:

    a. **Engagement of Vendor.** Defendants shall engage an e-discovery vendor to assist with the identification, collection, and removal of any Trade Secrets in Defendants' possession, and the preservation of data sources containing Trade

Secrets, under appropriate conditions, in connection with any Defendant's obligations under this injunction or in any legal or regulatory proceedings in the United States and elsewhere. The engagement of such vendor shall be subject to Insulet's approval; provided, however, that such approval shall not be unreasonably withheld.

b. **Inspection of Data Sources.** The e-discovery vendor shall be granted access to, and shall inspect, all data sources (including backup, deleted, and archived files) in Defendants' possession, custody, or control used by any individual who was involved in the design, development, manufacture, or regulatory submissions for the EOPatch 2 from August 1, 2017, through the present, including any database or document management system, custodial data sources, non-custodial data sources, corporate and personal email accounts, and paper files.

c. **Identification and Disclosure of Data Sources.** The e-discovery vendor shall identify, log, and disclose to Insulet all data sources in Defendants' possession, custody, or control that incorporate information related to the Trade Secrets, including copies or near-duplicates thereof. The log shall include all available metadata including document custodian, file path, and last access dates.

d. **Preservation and Quarantine of Data Sources.** Prior to removal of any Trade Secrets, and in order to satisfy Defendants' discovery obligations and the litigation holds in place due to this and other proceedings, the e-discovery vendor shall create and preserve a copy of each of the data sources listed

above that contain Trade Secrets (the "Preserved Files"). The Preserved Files shall be maintained by the e-discovery vendor until further order of the Court or written agreement of the parties. The Preserved Files shall be maintained in such a manner to ensure that if any of the files must be returned to any of the Defendants in the future, they may be accessed without undue difficulty or expense.

e. **Access to Preserved Files.** The Preserved Files shall be accessible only by (1) the e-discovery vendor, (2) Insulet, (3) outside counsel for Insulet (including experts, vendors, paralegals, and other persons or entities reasonably necessary to assist outside counsel for purposes of this litigation), and (4) outside counsel for Defendants (including experts, vendors, paralegals, and other persons or entities reasonably necessary to assist outside counsel for purposes of this litigation) (collectively, "Defendants' Outside Counsel"). Defendants' Outside Counsel may have access to, and make use of, the Preserved Files only (1) in connection with this litigation and any related appeals; (2) with the express written permission by the Court, obtained only after providing notice to Insulet; or (3) by written agreement with Insulet.

f. **Removal of Trade Secrets.** As directed by the e-discovery vendor, and after the creation of the Preserved Files, Defendants shall promptly destroy or otherwise remove from their possession, custody, or control all documents, files, CADs, and source code, including any copies, in their possession, custody, or control that contain, disclose, reflect, or are derived from the Trade Secrets; provided, however, that Defendants shall be permitted to retain

possession of any such files that are reasonably necessary to continue manufacturing and distributing products permitted under the temporary exceptions provided in Paragraphs 10 and 11, but only for as long as those exceptions remain in effect.

g. **Certification of Completion of Identification and Logging of Files and Provision of Log.** Within 60 days of entry of this injunction, the e-discovery vendor shall certify in writing to Insulet the completeness of the identification and logging of files pursuant to Paragraph 14(c). Within 90 days of entry of this injunction (or at such other time as mutually agreed to by the parties in writing), the e-discovery vendor shall provide Insulet with the final log of data sources prepared pursuant to Paragraph 14(c).

h. **Certification of Completion of Removal of Files.** Within 120 days of entry of this injunction, the e-discovery vendor and Defendants shall certify in writing to Insulet that Defendants are in compliance with Paragraphs 14(d). Within 60 days of the expiration of the temporary exceptions provided in Paragraphs 10 and 11, the e-discovery vendor and Defendants shall certify in writing to Insulet that Defendants are in compliance with Paragraphs 14(f).

i. **Retention and Certification of Removal of Files by Defendants' Outside Counsel.** Notwithstanding any other provision of this injunction, Defendants' Outside Counsel may retain possession of any files containing Trade Secrets that they acquired for purposes of this litigation to continue conducting the litigation and any related appeals, consistent with the Stipulated Protective Order in this case and any other applicable law, regulation, or court order.

Within 60 days of the conclusion of this litigation, including any related appeals, the e-discovery vendor and Defendants' Outside Counsel shall certify in writing to Insulet that Defendants' Outside Counsel are in compliance with Paragraph 14(f).

j. **Fees and Expenses.** All fees and expenses associated with the requirements of Paragraph 14 shall be borne solely by Defendants.

15. **Auditing Rights.** Upon receipt of the final log of data sources prepared pursuant to Paragraphs 14(c) and 14(g), Insulet may conduct audits of any of the Defendants to ensure compliance with this injunction, as follows:

a. **Ability to Audit.** Insulet may audit, through an independent third party chosen by Insulet, and in compliance with the Stipulated Protective Order in this case, the data sources identified in Paragraph 14(b).

b. **Results of Audits.** The findings of such audits will be available only to Insulet, outside counsel for Insulet (including experts, vendors, paralegals, and other persons or entities reasonably necessary to assist outside counsel for purposes of this litigation), the independent third-party auditor, the Court, Defendants, and Defendants' Outside Counsel.

c. **Notice of Non-Compliance.** If the auditor finds that any Defendant is not or may not be in compliance with the terms of this injunction, the auditor shall provide written notice and a copy of its findings to Insulet to permit Insulet to investigate the cause(s) and extent of the Defendant's non-compliance. The auditor shall also provide written notice and a copy of its findings to the non-compliant Defendant.

**d. Frequency of Audits.** The audits may be conducted no more than twice in any twelve-month period per Defendant, and shall occur only during the course of normal business hours, and upon electronic or written notice of at least five business days to the relevant Defendant. The parties shall use good-faith efforts to conduct the audit in a manner least disruptive to Defendants' normal business activities.

**16. Retention of Jurisdiction.** The Court retains jurisdiction to enforce and modify this injunction to the extent allowed by law.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: April 24, 2025