UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INSULET CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 23-11780-FDS |
| ) | |
| EOFLOW CO., LTD.; EOFLOW, INC.; ) | |
| NEPHRIA BIO, INC.; and JESSE KIM, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR POST-VERDICT DISCOVERY

**SAYLOR, C.J.**

This dispute concerns the misappropriation of trade secrets for the design and manufacture of an insulin patch pump, the Omnipod, produced by plaintiff Insulet Corporation. Plaintiff sued seven defendants: EOFlow Co., Ltd., and EOFlow, Inc. (collectively, "EOFlow"); Nephria Bio, Inc.; EOFlow's Chief Executive Officer, Jesse Kim; and three former Insulet employees, Luis Malave, Steven DiIanni, and Ian Welsford.

After a month-long trial, a jury returned a verdict on December 3, 2024, finding six defendants—all except Malave—liable for misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"). The jury awarded plaintiff $452 million, composed of $170 million in unjust-enrichment damages and $282 million in exemplary damages.

On February 25, 2025, pursuant to a separately negotiated Consent Permanent Injunction and Judgment agreement between plaintiff and Malave, DiIanni, and Welsford, the Court entered

a final judgment under Fed. R. Civ. P. 54(b) as to those defendants and issued a permanent injunction in accordance with the terms of the parties' agreement. (ECF Nos. 924-25).

On April 24, 2025, the Court issued a permanent injunction as to the remaining defendants—that is, EOFlow Co., Ltd.; EOFlow, Inc.; Nephria Bio, Inc.; and Jesse Kim.[1] Among other things, the injunction prohibits defendants (with certain limited temporary exceptions) from possessing or disclosing the misappropriated trade secrets anywhere in the world, and from manufacturing, selling, or seeking regulatory approval for any product developed using those trade secrets. (ECF No. 948). The injunction further orders the re-assignment of one of defendants' patents that discloses plaintiff's trade secrets, along with any other patents and patent applications that disclose the same invention. It also directs defendants to transfer to plaintiff any monetary fee received from Medtronic PLC stemming from its terminated acquisition of EOFlow. Finally, to avoid conferring on plaintiff an impermissible double recovery, in its final judgment order, the Court reduced plaintiff's monetary damages award to $59.4 million based on the costs that defendants avoided as a result of their misappropriation, plus corresponding exemplary damages. (ECF Nos. 946-47).[2]

Plaintiff has moved under Fed. R. Civ. P. 69(a)(2) to compel post-verdict discovery concerning, among other things, defendants' current financial condition. Plaintiff has served 11 discovery requests on defendants and has sought supplementation to four previously served requests. Defendants refused to produce the information and oppose plaintiff's motion on the grounds that the discovery requests are premature and overbroad.

---

[1] For the sake of convenience, the term "defendants" will hereafter refer only to EOFlow, Nephria Bio, and Kim unless the context indicates otherwise.

[2] The final monetary damages award totaled $59,400,001.00, comprising unjust-enrichment damages of $25.8 million and exemplary damages of $33.6 million against EOFlow and Kim, payable jointly and severally, and nominal damages of $1 against Nephria Bio.

For the following reasons, the motion will be granted.

**I.     Analysis**

Rule 69(a)(2) affords "[l]iberal discovery" to a judgment creditor to obtain discovery from "any person," including a judgment debtor, so long as the discovery is "[i]n aid of the judgment or execution." *ClearOne Commc'ns, Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011) (quoting Fed. R. Civ. P. 69(a)(2)). "The presumption is in favor of 'full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment.'" *Id.* (quoting *United States v. Neumann*, 1999 WL 156151, at *1 (D. Mass. Mar. 5, 1999)). When a dispute arises concerning the permissible scope of discovery, "[d]istrict courts exercise broad discretion to manage [such] matters." *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003).

Here, the information plaintiff seeks falls within the permissible scope of discovery under Rule 69(a)(2). First, plaintiff has requested information concerning defendants' financial condition, including (1) updated financial statements, (2) an individualized identification of each defendant's assets and liabilities, (3) descriptions of any contemplated dividend payments or other property transfers between EOFlow and its shareholders, (4) descriptions of defendants' historic and prospective capital inflows and outflows, and (5) updated sales data for EOPatch products. Such information lies squarely within the range of discovery helpful to "trace the debtor[s'] assets" and to ultimately enforce the final judgment against defendants. *See Chiang*, 276 F.R.D. at 404

Second, plaintiff seeks information concerning defendants' ongoing arbitration proceeding with Medtronic PLC, including information concerning a potential resolution and payment of a break-up fee to EOFlow. Such information is relevant to enforce the permanent

injunction, which directs defendants to transfer to plaintiff any fee received from Medtronic related to its terminated acquisition of EOFlow. Any funds arising out of the Medtronic break-up fee will be credited towards the final monetary award. Thus, information concerning the status of the break-up fee is germane to the final judgment and therefore discoverable.

Third, plaintiff has requested a list of defendants' patents and pending patent applications. The permanent injunction order directs defendants to transfer ownership of US 2023/0248902A1 and any patents and patent applications in any jurisdiction that disclose the same invention. Although patents are generally reviewable to the public, patent-publishing rules vary by jurisdiction and patent applications may not be broadly accessible. Permitting discovery of defendants' patents and pending patent applications will aid the execution of the final judgment by enabling plaintiff to evaluate whether any additional patents beyond US 2023/0248902A1 must be transferred under the terms of the permanent injunction order. Such discovery will therefore be permitted.

Defendants nonetheless oppose the discovery requests on multiple grounds. Defendants' first contention—that the discovery requests are premature because they were served before final judgment had been entered—is now moot.

Defendants further assert that the discovery requests related to their asset transfers are unwarranted because they are based on an unsubstantiated concern that defendants may be attempting to conceal their assets. However, regardless of the credibility of those concerns, the discovery requests relate to plaintiff's efforts to trace defendants' assets and to ascertain their ability to satisfy the judgment. *See id.* Thus, information related to defendants' transfer of assets, including dividend distributions and capital raises, is discoverable and not dependent on the veracity of the asset-concealment claims.

Defendants next contend that the discovery requests concerning the Medtronic arbitration proceeding impermissibly seek production of privileged information. However, the contested requests focus only on communications and documents that have been shared between defendants and Medtronic; thus, the information is unlikely to be privileged. *See Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5, 30 (1st Cir. 2011). The two requests at issue specifically seek (1) "pleadings and contentions" that have been "filed by or exchanged between the parties" of the arbitration and (2) documents and communications related to any agreements made with Medtronic to resolve the arbitration. (Memo. Supp. Mot. to Compel at 5). Neither of those requests seeks internal information protected under attorney-client privilege; rather, plaintiff seeks information shared by defendants with a third party. To the extent that defendants in good faith believe that a particular document subject to the discovery requests is privileged and not discoverable, defendants may produce a privilege log, and the parties can raise any resulting concerns as needed. At this stage, however, given their relevance to the permanent injunction order and to the collection of the final judgment award, the discovery requests concerning the Medtronic arbitration proceeding will be permitted.

Finally, defendants contend that the request for information concerning asset transfers dating back to January 1, 2018, is overly burdensome. Again, there is a presumption in favor of "full discovery" to facilitate plaintiff's tracing of defendants' assets and enforcement of the judgment. *See Chiang*, 276 F.R.D. at 404. Here, the misappropriation of plaintiff's trade secrets—which the jury found to have been done willfully and maliciously by EOFlow Co., Ltd., Kim, and Welsford—began as early as 2018. Plaintiff may therefore reasonably inquire about past transfers of defendants' assets because that information may "reasonably relate[]" to their ability to satisfy the judgment award. *See id.*

5

In sum, plaintiff's post-verdict discovery requests reasonably aid the enforcement of the final judgment and permanent injunction and are therefore permissible under Rule 69(a)(2).

## II. Conclusion

For the foregoing reasons, plaintiff's motion to compel post-verdict discovery is GRANTED.

**So Ordered.**

Dated: May 6, 2025

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court